F I L E D
**United States Court of Appeals
Tenth Circuit**

**SEP 13 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

LEYKUN TEKLETSION
HABTEDENGIL,

Petitioner,

v.

JOHN ASHCROFT, Attorney General
of the United States,

Respondent.

No. 03-9543
(No. A75-390-821)
(Petition for Review)

---

**ORDER AND JUDGMENT** *

---

Before **KELLY** , Circuit Judge, **BRORBY** , Senior Circuit Judge, and **BRISCOE** , Circuit Judge.

---

Petitioner Leykun Tekletsion Habtedengil, an Ethiopian native of Amharic ethnicity, seeks review of a decision of the Board of Immigration Appeals (BIA) dismissing his appeal from the denial of his application for asylum and

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

withholding of removal. [1] Mr. Habtedengil raises three issues on appeal. He asserts (1) the BIA committed error in relying on the IJ's adverse credibility finding because it was not supported by substantial evidence in the record; (2) the BIA committed error by imposing an unreasonable and unduly burdensome standard of proof on him; and (3) the BIA's decision is not supported by substantial evidence because it fails to rule on and ignores significant evidence pertinent to his asylum application and to those similarly situated in Ethiopia. Because the BIA's conclusion, that Mr. Habtedengil failed to establish past persecution or a well-founded fear of future persecution, was not contrary to what a reasonable factfinder would have been compelled to conclude, we deny his petition for review.

In 1992, Mr. Habtedengil joined a government-opposition group called the All Amhara People's Organization (AAPO). Over time he became, in his words, "a prominent leader and organizer" of this political organization. Admin. R. at 417. According to Mr. Habtedengil, he was twice arrested by members of the Ethiopian government due to his AAPO involvement. Both times he was

---

[1] As a preliminary matter, we note that Mr. Habtedengil has waived any argument with respect to the denial of his request for withholding of removal because he did not raise that issue before the BIA. *Rivera-Zurita v. INS*, 946 F.2d 118, 120 n.2 (10th Cir. 1991) (holding that "[t]he failure to raise an issue on appeal to the Board constitutes failure to exhaust administrative remedies . . . and deprives the Court of Appeals of jurisdiction to hear the matter"). This disposition therefore considers only the denial of asylum.

purportedly interrogated and severely beaten on a daily basis. He was first arrested in September 1994. After being held for twenty-eight days, the Ethiopian government released him, but insisted he refrain from participating in opposition activities or face harsher punishment in the future. Mr. Habtedengil was arrested again in May 1996. He maintains that he was beaten much more brutally during this detention than during his first. After another stern warning not to participate in opposition activities, the Ethiopian government released him on December 9, 1996. He claims he was "barely alive" when he "was finally released," and that as a condition of his release, he was made to sign an agreement that if summoned by the Ethiopian government, he would make himself available for further interrogation. *Id.* at 423.

On February 17, 1997, Mr. Habtedengil received such a summons; it allegedly caused him to fear for his life. Several days later he fled Ethiopia and entered the United States on a visitor's visa, leaving behind his wife, two children, and other family members. In May 1997, he filed an application for asylum and withholding of removal, alleging the Ethiopian government persecuted him because of his political opinion. The INS [2] thereafter served

_____

[2] "The INS ceased to exist on March 1, 2003, and its functions were transferred to the U.S. Citizenship and Immigration Services ("USCIS") within the newly formed Department of Homeland Security." *Sviridov v. Ashcroft*, 358 F.3d 722, 724 n.1 (10th Cir. 2004).

Mr. Habtedengil with a notice to appear, asserting that he was removable under 8 U.S.C. § 1227(a)(1)(B), because he had overstayed his visitor's visa. At a master calendar proceeding Mr. Habtedengil conceded removability but sought asylum and withholding of removal. After a merits hearing, an immigration judge (IJ) issued an oral decision denying Mr. Habtedengil's application for asylum and withholding of removal, but granting voluntary departure. Mr. Habtedengil timely appealed to the BIA, which dismissed his appeal on March 31, 2003. This petition for review followed. Our jurisdiction arises under 8 U.S.C. § 1252(a).

"A request for asylum involves a two-step process." *Krastev v. INS*, 292 F.3d 1268, 1270-71 (10th Cir. 2002); *see also* 8 U.S.C. § 1158 (Asylum). First, the applicant has the burden, 8 C.F.R. § 208.13(a), of proving that he is a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A). There are three ways an applicant can establish refugee status, two of which are relevant here: by showing that, on account of his "race, religion, nationality, membership in a particular social group, or political opinion," (1) he has a "well-founded fear of [future] persecution," 8 U.S.C. § 1101(a)(42)(A), or (2) he "has suffered past persecution, which gives rise to a [rebuttable] presumption that he . . . has a well-founded fear of future persecution." *Krastev,* 292 F.3d at 1270. Once an applicant establishes refugee status, then at step two of the process, "the Attorney General exercises discretionary judgment in either granting or denying asylum."

-4-

*Id.* at 1271. Because Mr. Habtedengil failed to demonstrate refugee status at step one,

> our review is limited, in breadth, to that threshold determination. Our review is further limited, in depth, to evaluating whether the record on the whole provides substantial support for that determination or, rather, is so decisively to the contrary that a reasonable factfinder would have concluded petitioner is a refugee.

*Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003) (citation omitted); *see also* 8 U.S.C. § 1252(b)(4)(B) (stating that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary"). In accordance with our deferential standard of review, we will neither "weigh the evidence" nor "question the immigration judge's or BIA's credibility determinations so long as they are substantially reasonable," *Woldemeskel v. INS*, 257 F.3d 1185, 1192 (10th Cir. 2001), and "specific, cogent" reasons substantiate an adverse credibility finding, *Sviridov*, 358 F.3d at 727.

## I.

Mr. Habtedengil asserts that the BIA committed error in relying on the IJ's adverse credibility finding because it was not supported by substantial evidence in the record. We disagree. While acknowledging that there are problems in Ethiopia, the IJ found incredible that (1) throughout Mr. Habtedengil's tenure with the AAPO, he was employed by an air carrier run by the Ethiopian government, Ethiopian Airlines, which promoted him in 1994 and again in 1996;

-5-

(2) Ethiopian Airlines allowed him to return to work after both of his arrests by the Ethiopian government in 1994 and 1996; (3) he took five international trips between 1992 and 1996, but did not seek asylum on any of those occasions; (4) although the Ethiopian government was allegedly seeking Mr. Habtedengil, all of the documents he used to flee Ethiopia were in his name; and (5) the Ethiopian government is persecuting AAPO members even though the State Department Report on Ethiopia indicates that the AAPO is a registered political party that opposes the government, has its own newspaper broadcasting its opposition to the regime, and is represented in the national government by four or five cabinet members. The record on the whole provides substantial support for the BIA's reliance on the IJ's adverse credibility determination. Thus, we cannot say that it was substantially unreasonable.

## II.

In dismissing Mr. Habtedengil's appeal, the BIA held:

> Overall, we agree with the Immigration Judge that the testimony, of limited credibility and lacking in detail, combined with the inadequate documentary support, provides insufficient evidence to meet the overall burden of proof. This is particularly true where the respondent claims to have had a rather high position in a political organization, yet has been unable to provide very much support to this claim, other than documentation of questionable authenticity and a photo of himself with a party leader.

Admin. R. at 3. Mr. Habtedengil takes issue with this holding, arguing that the BIA erred by imposing an unreasonable and unduly burdensome standard of proof

-6-

on him, which was contrary to existing law. He first notes that an applicant's testimony, "if credible . . . may be sufficient to sustain the [applicant's] burden of proof without corroboration." 8 C.F.R. § 208.13(a). But, as we have already explained, substantial evidence supports the BIA's reliance on the IJ's determination that Mr. Habtedengil's testimony was incredible.

Mr. Habtedengil goes on to assert that the BIA's dismissal of his "corroborative evidence as 'inadequate' to meet [his] burden of proof" does not comport with the standards established in *Matter of S-M-J*, 21 I. & N. Dec. 722 (BIA 1997). Pet'r Br. at 16. In *Matter of S-M-J* the BIA held, in pertinent part, that

> where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided. That is, an asylum applicant should provide documentary support for material facts which are central to his or her claim and easily subject to verification . . . . If the applicant does not provide such information, an explanation should be given as to which such information was not presented.

21 I. & N. Dec. at 725.

Mr. Habtedengil contends the BIA violated its own precedent and committed reversible error by: misunderstanding or ignoring the evidence he submitted, failing to explain what other evidence he could have been reasonably expected to submit, and failing to consider whether he had provided an adequate explanation for evidence not submitted. We cannot agree. Mr. Habtedengil

provided corroborating evidence, the BIA rejected it, and as such     *Matter of S-M-J*

is not implicated.

Mr. Habtedengil bears the burden of proving a well-founded fear of future persecution or that he has suffered past persecution. In shouldering this burden, Mr. Habtedengil offered more than a half-dozen pieces of corroborating evidence that the IJ explicitly indicated had been admitted into evidence, including (1) two affidavits from individuals who know Mr. Habtedengil; (2) a psychological evaluation of Mr. Habtedengil; (3) country condition evidence; (4) reports from an individual who is an expert on Ethiopia; and (5) copies of Mr. Habtedengil's visa and passport. [3] On the whole, the record contains substantial evidence to support the BIA's agreement with the IJ's conclusion that "the evidence presented was not adequate to support [his] burden of proof," Admin. R. at 2, and a reasonable factfinder would not have been compelled to conclude otherwise.

## III.

Finally, Mr. Habtedengil contends the BIA's decision is not supported by substantial evidence because it fails to rule on and ignores significant evidence

---

[3]     Mr. Habtedengil has chosen on appeal not to rely on three other pieces of "corroborating" evidence found to be fraudulent by the respondent's forensic document expert: an AAPO membership letter, a police letter referencing his second arrest, and the summons he purportedly received from the Ethiopian government.

pertinent to his asylum application and to those similarly situated in Ethiopia. He claims the following evidence was "ignored":

> live testimony of an eye witness, the written affidavits of two additional eye witnesses, a written report from an expert [psychologist] indicating that [Mr. Habtedengil] suffers from Post Traumatic Stress Syndrome, written testimony from expert witnesses regarding country conditions in general, and the persecution of AAPO members specifically, and extensive additional information regarding country conditions, in addition to showing the IJ scars that reflect injuries [Mr. Habtedengil] suffers as a result of torture.

Pet'r Opening Br. at 28. Mr. Habtedengil also contends that "it was error on the part of the BIA to give such little significance to the photograph of the Petitioner with the Vice President of the AAPO . . . ." *Id.* Although the BIA does not specifically mention all of this evidence in its decision, "the BIA is not required to discuss every piece of evidence when it renders a decision." *Hadjimehdigholi v. INS*, 49 F.3d 642, 648 n.2 (10th Cir. 1995). Moreover, there is nothing to support Mr. Habtedengil's claim that the BIA did not consider this evidence: the IJ considered it, and the BIA agreed with the IJ's evaluation of it. Thus, the BIA did not err on this point. [4]

---

[4] For the first time in his reply brief, Mr. Habtedengil asserts that the BIA committed error by refusing to consider supplemental evidence he provided while his case was pending; but, by not raising "this issue in his opening brief . . . [he] has waived the point." *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994).

Having reviewed the record in accordance with the prescribed deferential standard of review, we hold "that petitioner has failed to carry the heavy burden placed on those challenging adverse asylum determinations." *Vatulev*, 354 F.3d at 1208. The petition for review is DENIED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge