[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-14932
Non-Argument Calendar
_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 29, 2004
THOMAS K. KAHN
CLERK

Agency Docket No. A79-346-908

JOANA CLAUDIA SEPULVEDA,
MAURICIO SEPULVEDA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of
the Board of Immigration Appeals

_____

**(July 29, 2004)**

Before BLACK, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Joana C. Sepulveda, a Colombian national, petitions for review of the final

order of the Board of Immigration Appeals (BIA) affirming without opinion the

Immigration Judge's (IJ's) denial of her requests for asylum and withholding of removal under the Immigration and Nationality Act (INA).[1]  8 U.S.C. §§ 1158, 1231(b)(3).  Sepulveda argues the BIA's affirmance of the IJ's denial of her application demonstrates an adversarial tone and a unilaterally-heightened standard of adjudication for Colombian asylum claims, in violation of the Supreme Court's decision in *INS v. Cardoza-Fonseca*, 480 U.S. 421, 107 S. Ct. 1207 (1987).  Sepulveda asserts she established a well-founded fear of persecution on account of her political opinion and activity.  Sepulveda also challenges the IJ's finding that internal relocation was a viable option.  Substantial evidence supports the IJ's decision.  We deny the petition.

## I.  BACKGROUND

Sepulveda and her husband entered the United States on September 11, 2000, as visitors with permission to remain until March 10, 2001.  On August 16, 2001, the INS served Sepulveda with a notice to appear, charging her with removability for having remained in the United States beyond the time allowed.  Sepulveda admitted the allegations of the notice to appear and conceded

---

[1]  Sepulveda does not raise any challenge in her brief to the denial of relief under the Convention Against Torture (CAT).  When an appellant fails to offer argument on an issue, that issue is abandoned.  *See United States v. Cunningham*, 161 F.3d 1343, 1344 (11th Cir. 1998); *see also Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (stating that passing references to issues are insufficient to raise a claim for appeal, and such issues are deemed abandoned).

removability. Sepulveda requested asylum, withholding of removal, and relief under the CAT on behalf of herself and her husband.

Sepulveda testified her pro-democracy ideology conflicted with that of the ELN guerilla group,[2] which advocated class struggle, Marxism, and dictatorship. Sepulveda, a resident of Cali, Colombia, belonged to a group at her university that initially organized political debates, and later organized marches and peace demonstrations. Sepulveda participated in approximately ten peace marches. When the "La Maria" massive kidnaping occurred,[3] Sepulveda and group members cooperated with a priest to negotiate between the kidnapers and the hostages' families. After becoming involved in the kidnaping negotiations, Sepulveda received three threatening telephone calls at her home, and the group received similar calls at the office. The callers, identifying themselves as ELN members, called Sepulveda by name, used profanity, directed her to stop her peace activities, and made death threats. Many of the group members quit, and the group's membership ultimately dwindled from 35 to 5. The group also placed "mailboxes" within restaurants to facilitate communication between the kidnapers, their hostages, victims' families, and the public. One of the mailboxes was located

---

[2] The National Liberation Army, or ELN, is one of Colombia's two major guerilla groups.

[3] The State Department's 1999 Country Report on Human Rights Practices for Colombia described this kidnaping as the abduction of 170 people from La Maria church by the ELN.

3

in the restaurant where Sepulveda was employed, and a bomb placed in that mailbox exploded just after she finished her shift. Sepulveda believed the bomb was related to her political activities. Before coming to the United States, Sepulveda relocated to her parents' home in Hamondi, Colombia, and her in-laws' home in Cali, Colombia.

Sepulveda testified she feared the ELN guerilla group would kill her or her family if they returned to Colombia. Thirteen years earlier, Sepulveda's uncle, a judge, received death threats related to a drug trafficking case. The uncle's wife was killed when the couple disregarded the threats.[4] Sepulveda believed the Colombian authorities would not assist her unless she had money or the names of the specific individuals issuing the threats.

In support of her application for relief, Sepulveda submitted an asylum application setting forth the basis of her claim generally consistent with her testimony. Sepulveda particularly noted in her application that her brother received threats from ELN members with regard to her political activity.

The record before the IJ also included the State Department's 1999 Country Report on Human Rights Practices for Colombia. The 1999 Country Report stated that Colombia's two major guerilla groups, FARC and ELN, exercised significant

---

[4] Sepulveda testified that in Colombia, such threats extend to family members.

4

influence in nearly 1,000 of the country's 1,085 municipalities. It described the abduction of 170 people from La Maria church by the ELN, and a demonstration in Cali by 70,000 to 250,000 people protesting the mass kidnaping. The 1999 Country Report also noted that as many as six million people marched in antiwar protests in October of that year.

The State Department's 2000 Country Report on Human Rights Practices for Columbia described the ELN's common abuse of noncombatants, including the use of kidnaping as a primary source of money, and employment of bombs to destroy facilities and intimidate targeted individuals. The 2000 Country Report indicated that as many as one million people have been displaced within Colombia since 1996, and noted the flood of displaced persons has overwhelmed the capacity of smaller municipalities and larger cities to provide services, leaving displaced individuals without health care, education, or employment.

The IJ denied Sepulveda's application for asylum, withholding of removal and CAT relief. The IJ found the following: (1) neither Sepulveda nor her husband had suffered past persecution, (2) Sepulveda failed to establish she suffered past mistreatment on account of any protected ground, or that anyone had the inclination to persecute her, and (3) Sepulveda failed to meet her burden to show that internal flight alternatives were unavailable to her. Having determined

that she failed to meet the lower burden of proof for asylum eligibility, the IJ concluded that Sepulveda was ineligible for withholding of removal. Finally, the IJ rejected Sepulveda's CAT relief claim on the grounds she failed to show she would likely suffer torture upon her return to Colombia, or that the Colombian authorities acquiesced to the guerilla action. Sepulveda appealed the BIA's decision, which affirmed the IJ's decision without opinion.

## II. STANDARD OF REVIEW

When the BIA summarily affirmed the IJ's decision without an opinion, the IJ's decision became the final removal order subject to review. *See Mendoza v. U.S. Attorney Gen.*, 327 F.3d 1283, 1284 n.1 (11th Cir. 2003). The IJ's findings of fact are reviewed under the substantial evidence test, and we "must affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (quotation marks and citation omitted). Under this highly deferential standard of review, the IJ's decision can be reversed only if the evidence "compels" a reasonable fact finder to find otherwise. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1, 112 S. Ct. 812, 815 n.1 (1992).

## III. ASYLUM

6

An alien who arrives in or is present in the United States may apply for asylum, which the Attorney General has discretion to grant if the alien meets the INA's definition of a "refugee." 8 U.S.C. § 1158(a)(1), (b)(1). A "refugee" is

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of *persecution or a well-founded fear of persecution on account of* race, religion, nationality, *membership in a particular social group, or political opinion.*

8 U.S.C. § 1101(a)(42)(A) (emphasis added). The asylum applicant carries the burden of proving statutory "refugee" status and thereby establishing asylum eligibility. *Al Najjar*, 257 F.3d at 1284. If he or she meets that burden, the actual grant of asylum is a matter of discretion. *Id.* The Attorney General's discretionary judgment whether to grant asylum "shall be conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

To establish asylum eligibility based on political opinion or group membership, the alien must, with credible evidence, establish (1) past persecution on account of her political opinion or group membership, or (2) a "well-founded fear" that her political opinion or group membership will cause future persecution. 8 C.F.R. § 208.13(a), (b). "[A]n applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable." *Al Najjar*, 257

7

F.3d at 1289.  Although the INA does not expressly define "persecution" for purposes of qualifying as a "refugee," *see* 8 U.S.C. § 1101(a)(42), in *Gonzalez v. Reno*, 212 F.3d 1338, 1355 (11th Cir. 2000) (quotation marks and citations omitted), we discussed other circuits' holdings that "persecution" is an "extreme concept," requiring "more than a few isolated incidents of verbal harassment or intimidation," and that "[m]ere harassment does not amount to persecution."

A showing of past persecution creates a presumption of a "well-founded fear," subject to rebuttal by the INS.  8 C.F.R § 208.13(b)(1).  A "well-founded fear" of persecution may also be established by showing a reasonable possibility of personal persecution that cannot be avoided by relocating within the subject country.  8 C.F.R § 208.13(b)(2)(ii).  To establish the necessary causal connection between the political opinion and the feared persecution, "the alien [must] present specific, detailed facts showing a good reason to fear that he or she will be *singled out* for persecution on account of such an opinion."  *Al Najjar*, 257 F.3d at 1287 (quotation marks and citations omitted).  We have stated that "where the alleged persecutors are not affiliated with the government, it is not unreasonable to require a refugee who has an internal resettlement alternative in his own country to pursue that option before seeking permanent resettlement in the United States, or at least

to establish that such an option is unavailable." *Mazariegos v. Office of U.S. Attorney Gen.*, 241 F.3d 1320, 1327 (11th Cir. 2001).

As a preliminary matter, there is no indication in the record that the IJ applied an incorrect standard in adjudicating Sepulveda's claim. Thus, Sepulveda's argument that the IJ's decision violated the Supreme Court's decision in *Cardoza-Fonseca*, 480 U.S. 421, 107 S. Ct. 1207 (1987), is without merit.

Substantial evidence supports the IJ's determination that Sepulveda did not establish she suffered past persecution on account of her political opinion or group membership. The evidence merely *permits*, but does not *compel*, the conclusion the restaurant bombing was directed at Sepulveda on account of her political activity. *See Elias-Zacarias*, 502 U.S. at 481 n.1, 112 S. Ct. at 815 n.1. Likewise, the menacing telephone calls and threat to her brother do not necessarily rise to the level of past persecution. *See Gonzalez*, 212 F.3d at 1355.

Substantial evidence supports the IJ's determination that Sepulveda did not establish a reasonable possibility of personal persecution that cannot be avoided by relocating within the subject country. The evidence does not compel the conclusion that the ELN retains an inclination to single out Sepulveda for persecution. Although the evidence shows that Sepulveda exercised leadership in the nonviolence movement while a university student, particularly in 1999, the

9

evidence does not indicate that her notoriety as an activist would outlast her nearly four-year absence from Colombia. Rather, the 1999 Country Report indicated Sepulveda's opposition to guerilla violence was shared by hundreds of thousands of people in Cali, and millions around Colombia, who marched in protest.[5]

The record evidence does not compel a finding that Sepulveda established her *prima facie* eligibility for asylum. Thus, substantial evidence supports the IJ's denial of asylum.

## IV. WITHHOLDING OF REMOVAL

An alien is entitled to withholding of removal under the INA if she can show that her "life or freedom would be threatened [on account of] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The alien bears the burden of demonstrating that it is "more likely than not" she will be persecuted or tortured upon being returned to her country. *Fahim v. U.S. Attorney Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002) (quotation marks and citations omitted). This is a more stringent standard than for

---

[5] To the extent the IJ based his decision on a finding that Sepulveda could viably relocate to an area where the ELN presence was nonexistent or minimal, the evidence does not support such a finding. The 1999 and 2000 Country Reports, on which the IJ ostensibly relied, make clear that guerillas exercise influence throughout Colombia, and that small and large municipalities are already overwhelmed by the huge populations of displaced persons, who are consequently without access to health care, education, or employment. Nevertheless, Sepulveda's inability to demonstrate she has a well-founded fear that she will be *singled out* for persecution on account of any protected ground is fatal to her asylum claim.

asylum. *Mazariegos*, 241 F.3d at 1325 n.2. "[I]f an applicant is unable to meet the well-founded fear standard for asylum, he is generally precluded from qualifying for either asylum or withholding of deportation." *Id.* (quotation marks and citation omitted).

Sepulveda failed to establish a well-founded fear of persecution on account of political opinion or group membership to support her asylum claim, and thus she cannot establish she is entitled to withholding of removal under the INA. The IJ's decision denying asylum and withholding of removal is supported by substantial evidence.

PETITION DENIED.