[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-12746
Non-Argument Calendar

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 10, 2005
THOMAS K. KAHN
CLERK

BIA No. A79-340-169

ALEJANDRO PATINO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(June 10, 2005)**

Before BIRCH, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

Alejandro Patino, a native and citizen of Colombia, petitions for review of

the final order of the Board of Immigration Appeals ("BIA"), which affirmed the immigration judge's ("IJ's") denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA").[1] In denying his asylum request, the IJ found that Patino did not demonstrate past persecution or a well-founded fear of future persecution by the Revolutionary Armed Forces of Colombia ("FARC") based on an imputed political opinion. On appeal, Patino argues he satisfied the standard for asylum based on: (1) his membership in El Coraje, a conservative political party; or (2) his involvement, at the Institute for the Development of Antiogquia ("IDEA"), in an internal audit investigation which revealed IDEA, a governmental agency, had provided funding to the FARC through a money laundering scheme. Upon thorough review of the record, as well as careful consideration of the parties' briefs, we find no reversible error and affirm.[2]

---

[1] We review only the denial of INA relief in the form of asylum. In his order, the IJ also denied asylum and withholding of removal under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). To the extent that Patino has not already abandoned his arguments on the CAT claims -- he primarily challenges the denial of INA relief in his brief -- we lack jurisdiction to review the IJ's denial of CAT relief because Patino did not exhaust those claims by raising them before the BIA. See INA § 242(d)(1), 8 U.S.C. § 1252(d)(1) ("[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right."). This exhaustion requirement is jurisdictional, and precludes review of a claim that has not been presented to the IJ or the BIA. See, e.g., Fernandez-Bernal v. Att'y Gen., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001). Moreover, based on our conclusion that Patino did not establish a case for asylum, we need not, and do not, consider whether he satisfied the higher standard for withholding of removal under the INA. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1292-93 (11th Cir. 2001).

[2] To the extent Patino's brief also includes arguments challenging the BIA's order denying his motion for reconsideration, in a December 3, 2004 Order, we dismissed his appeal as to that

When the BIA issues an affirmance without opinion, the IJ's decision becomes the final order subject to review. See Mendoza v. Att'y Gen., 327 F.3d 1283, 1284 n. 1 (11th Cir. 2003). As the fact-finder, it is the IJ's duty to determine credibility, and we will not substitute our judgment for that of the IJ. See Vasquez-Mondragon v. INS, 560 F.2d 1225, 1226 (5th Cir. 1977) (citation omitted).[3] The IJ's factual determination that an alien is not entitled to asylum must be upheld if it is supported by substantial evidence. See Mazariegos v. Att'y Gen., 241 F.3d 1320, 1323 (11th Cir. 2001). Under this highly deferential standard of review, a denial of asylum may be reversed only if the evidence would compel a reasonable fact-finder to find that the requisite fear of persecution exists. See INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 815 n.1, 117 L. Ed. 2d 38 (1992); see also 8 U.S.C. § 1252(b)(4)(B) ("administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary").

Because Patino's removal proceedings commenced after April 1, 1997, the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996), this case is

_____

order for lack of prosecution. Accordingly, we will not address those arguments in this opinion.

[3]The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

3

governed by the permanent provisions of the Immigration and Nationality Act ("INA"), as amended by IIRIRA. Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003); Balogun v. U.S. Att'y Gen., 304 F.3d 1303, 1309 (11th Cir. 2002). An alien who arrives in or is present in the United States may apply for asylum. See INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee." See INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is any person who is unwilling to return to his home country or to avail himself of that country's protection "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particulars social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42)(A).

The asylum applicant carries the burden of proving statutory "refugee" status. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001); 8 C.F.R. § 208.13(a). The applicant satisfies this burden by showing, with specific and credible evidence: (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that his or her statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. "[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Sepulveda v. U.S. Att'y Gen., 378 F.3d 1260, 1264

4

(11th Cir. 2004) (citation and internal quotation marks omitted).  Put another way,

"'[m]ere harassment does not amount to persecution.'"  Id. (alteration in original)

(quoting Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000)).

The petitioner's well-founded fear of persecution must be on account of, or

because of, one of the statutorily listed factors, such as his political opinion.  See

Elias-Zacarias, 502 U.S. at 483, 112 S. Ct. at 816.  The petitioner must establish

this causal connection by "presenting specific, detailed facts showing a good

reason to fear that he or she will be singled out for persecution on account of such

an opinion."  Sepulveda, 401 F.3d at 1231 (quotation omitted).  We have approved

of a "country-wide requirement" in which a refugee must first pursue an "internal

resettlement alternative" in his own country, or establish that this is not possible,

before seeking asylum here.  Mazariegos, 241 F.3d at 1326-27 (11th Cir. 2001).

"'[A]n imputed political opinion, whether correctly or incorrectly

attributed,' may constitute a ground for a 'well-founded fear' of political

persecution within the meaning of the INA."  Al Najjar, 257 F.3d at 1289 (quoting

Morales v. INS, 208 F.3d 323, 331 (1st Cir. 2000)).  To prevail on a theory of

imputed political opinion the asylum applicant must show that the "[p]ersecutor

falsely attribute[d] an opinion to [him], and then persecute[d][him] because of that

mistaken belief about [his] views."  Id. (alterations in original) (internal quotation

5

marks and citations omitted). Even if the asylum applicant establishes that the persecutor imputed a political opinion to him, he would still have to demonstrate that he has a well-founded fear of persecution because of that imputed opinion. Id.

Here, substantial evidence supports the BIA's decision that Patino was not entitled to asylum, based on either past persecution or a well-founded fear of future persecution, on account of a political opinion. The only evidence of Patino's alleged past persecution attributable, with any degree of specificity, to the FARC consisted of some threatening phone calls and an incident during which some people wearing FARC armbands intercepted Patino's car on the road, physically assaulted him, and ordered him to retract certain parts of his IDEA audit report. The IJ found that, while Patino may have held a political opinion and "even gone so far as being a member of a political organization [El Coraje]," there was no evidence "that the FARC had any interest whatsoever in his membership . . . nor is there even any indication that the FARC had any interest in his political opinion at all."

As for Patino's participation in the audit of IDEA, and the FARC's threats and the incident of physical violence against Patino, the IJ determined that the FARC had acted not based on Patino's political opinion, but simply to stop him from conducting the audit and revealing the money laundering scheme through

6

which the FARC was receiving some of its funds. The IJ found the FARC's alleged conduct was insufficient to demonstrate past persecution, and nothing in the record compels us to reverse that finding. See Adefemi, 386 F.3d at 1027. In fact, these alleged acts appear to be merely "a few isolated incidents of verbal harassment or intimidation," which is insufficient to establish past persecution. See Sepulveda, 401 F.3d at 1231 (quotation omitted). Threats or harassment, alone, do not constitute persecution on account of a statutorily protected ground. See Vatulev v. Ashcroft, 354 F.3d 1207, 1210 (10th Cir. 2003); Mikhailevitch v. INS, 146 F.3d 384, 390 (6th Cir. 1998).

As for a well-founded fear of future persecution, because Patino did not present "specific, detailed facts showing a good reason to fear that he . . . will be singled out for persecution," id. at 1231 (quotation omitted), we are not compelled to conclude that Patino has established a case for asylum on that basis. Notably, after Patino's attempts to sanitize his audit report were unsuccessful, he left his job at IDEA. Although he obtained a visa for travel to the United States within the same month as leaving IDEA, he did not leave Colombia for approximately three months, during which he lived incident-free, with no subsequent interaction with the FARC. Moreover, the record contains no evidence that Patino abandoned his political beliefs or affiliation with El Coraje during that same time.

Quite simply, nothing in the record indicates that the FARC persecuted Patino on account of his political opinions, or his affiliation with El Coraje, or that the FARC, imputing a political opinion to Patino, perceived Patino's involvement in the IDEA audit as a political statement against the FARC. We are satisfied that substantial evidence supports the IJ's conclusion that Patino failed to meet his significant burden of proving either past persecution or a well-founded fear of future persecution on the basis of his political opinion. And, we cannot say the record evidence would compel a reasonable fact-finder to reach a contrary conclusion on this petition for asylum. See Elias-Zacharias, 502 U.S. at 481 n.1, 112 S.Ct. At 815 n. 1; 8 U.S.C. § 1252(b)(4)(B). Accordingly, we deny the petition for review.

**PETITION DENIED.**

8