[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 04-13805
Non-Argument Calendar
_____

Agency Nos. A95-547-246 & A95-547-247

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 17, 2005
THOMAS  K. KAHN
CLERK

LEONARDO SALAMANCA,
NANCY SOTO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of
the Board of Immigration Appeals
_____

(June 17, 2005)

Before DUBINA, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Leonardo Salamanca and his wife, Nancy Soto ("Salamanca" and "Soto,"

collectively, "the petitioners"), through counsel, petition this court for review of

the Board of Immigration Appeal's ("BIA's") order summarily affirming the Immigration Judge's ("IJ's") decision to deny them asylum and withholding of removal under the Immigration and Nationality Act ("INA"). Because the petitioners' immigration proceedings commenced after April 1, 1997, the permanent rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996) ("IIRIRA"), govern their petition for review. When the BIA issues a decision, we review that decision, except to the extent that the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Because the BIA in this case stated that the IJ's decision was "the final agency determination," we will "review the IJ's analysis as if it were the [BIA's]." *See id.*

On appeal, the petitioners assert that the IJ failed to explain why the threats directed towards Salamanca and the assaults he endured were not politically motivated, as the IJ failed to address the attacks and threats with any specificity. The petitioners contend that Salamanca testified, and the evidence showed, that he was involved in the Conservative Party, a group which the Revolutionary Armed Forces of Colombia ("FARC"), one of the major paramilitary groups in Colombia, found "objectionable." The petitioners allege that Salamanca received numerous threatening calls from FARC members, and that the persecution escalated, as

Salamanca was shot by FARC members on August 12, 1995. These threats and attacks, the petitioners contend, were more than mere harassment, and the IJ erred in finding that Salamanca was not persecuted on the basis of a protected ground. In light of the evidence in the record, particularly the evidence discussing the role of guerilla groups in Colombia, the petitioners contend, a reasonable person would fear that he was endangered on account of a protected ground.

To the extent that the IJ's decision was based on a legal determination, our review is *de novo*. *Mohammed v. Ashcroft*, 261 F.3d 1244, 1247-48 (11th Cir. 2001). The IJ's factual determination that an alien is not entitled to asylum must be upheld if it is supported by substantial evidence. *See Mazariegos v. U.S. Att'y Gen.*, 241 F.3d 1320, 1323 (11th Cir. 2001); *cf.* INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B) (providing that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary"). Under this highly deferential standard of review, a denial of asylum may be reversed only if the evidence would compel a reasonable factfinder to find that the requisite fear of persecution exists. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1, 112 S.Ct. 812, 815 n.1, 117 L.Ed.2d 38 (1992).

An alien who arrives in or is present in the United States may apply for asylum. *See* INA § 208(a)(1), 8 U.S.C. § 1158(a)(1); *Sepulveda v. U.S. Att'y Gen.*,

401 F.3d 1226, 1230 (11th Cir. 2005), *superseding* 378 F.3d 1260 (11th Cir. 2004). The Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee." *See* INA § 208(b)(1), 8 U.S.C. § 1158(b)(1); *Sepulveda*, 401 F.3d at 1230.

A "refugee" is:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. *Al Najjar*, 257 F.3d at 1284. If the applicant meets this burden, then the Attorney General may exercise his discretion to grant the applicant asylum. *Id.* In this instance, because the IJ concluded that Silva failed to establish eligibility for asylum, there was no exercise of discretion. Accordingly, we need only address whether substantial evidence supports the IJ's conclusion that Silva failed to establish that she was statutorily eligible for asylum and withholding of removal.

An alien is entitled to asylum if he or she can establish, with specific and credible evidence: (1) past persecution on account of his or her membership in a particular social group, political opinion, or other statutorily listed factor, or (2) a "well-founded fear" that his or her membership in a particular social group, political opinion, or other statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); *Sepulveda*, 401 F.3d at 1230-31. "[A]n applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable." *Al Najjar*, 257 F.3d at 1289.

If the alien demonstrates past persecution, he or she is presumed to have a well-founded fear of future persecution unless the government can rebut the presumption. 8 C.F.R § 208.13(b)(1); *Sepulveda*, 401 F.3d at 1231. If, however, the alien does not establish past persecution, he or she bears the burden of showing a well-founded fear of persecution by showing that (1) he or she fears persecution based on his or her membership in a particular social group, political opinion, or other statutorily listed factor; (2) there is a reasonable possibility he or she will suffer persecution if removed to his or her native country; and (3) he or she could not avoid persecution by relocating to another part of his or her country, if under all the circumstances, it would be reasonable to expect relocation. *See* 8 C.F.R. § 208.13(b)(2), (3)(i).

Establishing a nexus between the statutorily listed factor and the feared persecution "requires the alien to present specific, detailed facts showing a good reason to fear that he or she will be *singled out* for persecution on account of" the statutorily listed factor. *Al Najjar*, 257 F.3d at 1287 (emphasis in original) (internal quotation omitted). "'[T]he statute protects against persecution not only by government forces but also by nongovernmental groups that the government cannot control.'" *Sanchez v. U.S. Att'y General*, 392 F.3d 434, 437 (11th Cir. 2004) (quoting *Sotelo-Aquije v. Slattery*, 17 F.3d 33, 37 (2nd Cir. 1994) (alteration in original) (discussing INA § 208, 8 U.S.C. § 1158, the asylum statute)). Evidence consistent with acts of private violence or that merely shows that an individual has been the victim of criminal activity does not constitute evidence of persecution on a statutorily protected grounds. *Abdille v. Ashcroft*, 242 F.3d 477, 494-95 (3rd Cir. 2001).

Neither the INA nor the regulations define "persecution." We have indicated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." *Sepulveda*, 401 F.3d at 1230 (internal quotations and citations omitted). Other courts have held that, to be an act of persecution, the behavior must threaten death, punishment, or the infliction of substantial harm or

suffering.  *See Sharif v. INS*, 87 F.3d 932, 935 (7th Cir. 1996).  "Threats alone generally do not constitute actual persecution; only rarely, when they are so immediate and menacing as to cause significant suffering or harm in themselves, do threats per se qualify as persecution."  *Vatulev v. Ashcroft*, 354 F.3d 1207, 1210 (10th Cir. 2003).  "To qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering."  *Nelson v. INS*, 232 F.3d 258, 263 (1st Cir. 2000).

In the instant case, we conclude from the record that substantial evidence supports the IJ's finding that the petitioners failed to demonstrate asylum eligibility because they did not establish that they suffered past persecution or had a well-founded fear of future persecution on account of Salamanca's political opinion.  In regards to past persecution, Salamanca testified that FARC members continuously made threatening phone calls to his family's home, but these threats do not appear to have been "immediate and menacing," and "[t]hreats alone generally do not constitute actual persecution."  *See Vatulev*, 354 F.3d at 1210 (persuasive authority).

Salamanca also detailed several incidents, including: (1) a drive-by shooting at his parents' house resulting in a bullet wound to his leg; (2) a shooting directed towards him, his brother, and his friends as they drove through the country; (3) an

attack and beating of his brother; and (4) a drive-by shooting directed towards him, his brother-in-law, and a friend, resulting in a bullet wound to his brother-in-law's leg. Salamanca identified FARC members as the perpetrators of two of the attacks: (1) the incident where he was shot at his parents' house, because he saw the FARC insignia on their clothing; and (2) the incident where he, his brother, and his friends were shot at as they drove, because the shooters wore "plastic boots," which he claims are part of typical FARC uniforms. However, Salamanca failed to establish a causal connection between his political opinion and these attacks, as he was not engaging in political activities when the shootings occurred, and there is no indication that the FARC shot at him "on account of" his political opinion. *See Sangha v. INS*, 103 F.3d 1482, 1486-87 (9th Cir. 1997) (holding that alien must establish a causal connection between his political opinion and the harm suffered by direct or circumstantial evidence, not by inference).

In relation to the other incidents, including the attack allegedly perpetrated against his brother as Salamanca and his friends hung political propaganda, Salamanca did not provide any evidence indicating that the perpetrators were FARC members. Moreover, the 2001 Country Report listed several groups that the FARC persecuted, including political candidates whom it did not support, but

8

did not indicate that the FARC persecuted election workers, regardless of their party affiliation, merely because it was opposed to the electoral process.

Finally, Salamanca's claim that he was persecuted is undermined by: (1) the fact that he returned to Colombia two times after he initially left to avoid persecution, and during his travels to various countries around the world, he never sought help or reported the persecution; and (2) the fact that he never reported any of the threats or attacks to the authorities in Colombia. Accordingly, substantial evidence supports the IJ's conclusion that the petitioners failed to establish past persecution.

Furthermore, substantial evidence supports the IJ's conclusion that the petitioners did not establish a well-founded fear of future persecution. A "well-founded fear" of persecution may be established by showing (1) past persecution that creates a presumption of a well-founded fear and overcomes any rebuttal by the INS, (2) a reasonable possibility of personal persecution that cannot be avoided by relocating within the subject country,[1] or (3) a pattern or practice in

---

[1] We recently rejected an IJ's finding that petitioners could avoid persecution at the hands of Colombia guerilla groups by relocating within Colombia, because the 1999 and 2000 Country Reports indicated that guerillas exercised influence throughout Colombia. *See Sepulveda*, 401 F.3d at 1232 n.7. However, as in *Sepulveda*, we need not address the petitioners' ability to relocate within Colombia in the instant case, because the evidence does not compel the conclusion that Salamanca was persecuted, or would be persecuted, on account of his political opinion if he were to return to Colombia.

the subject country of persecuting members of a statutorily defined group of which the alien is a part. 8 C.F.R. § 208.13(b)(1), (2). As discussed above, the petitioners did not establish that Salamanca had been subjected to past persecution, and hence, no presumption of a well-founded fear of future persecution arose. Salamanca also failed to establish a pattern or practice by FARC of persecuting members of the Conservative Party. Because the petitioners failed to present specific, detailed facts compelling the conclusion that they experienced past persecution in Colombia, or that they had a well-founded fear of persecution if they returned to Colombia, on account of Salamanca's political opinion, substantial evidence supports the IJ's denial of asylum.

In addition, if "an applicant is unable to meet the 'well-founded fear' standard for asylum, he is generally precluded from qualifying for either asylum or withholding of deportation." *Al Najjar*, 257 F.3d at 1292-93 (internal quotations and citations omitted). Accordingly, because the petitioners failed to establish a well-founded fear of persecution sufficient to support their asylum claim, they also could not establish that they were eligible for withholding of removal. *See Id.*, 257 F.3d at 1292-93, 1303-04. Accordingly, we deny the petitioners' petition for review.

**PETITION DENIED.**