[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 18, 2005
THOMAS  K. KAHN
CLERK

No. 05-10308
Non-Argument Calendar

BIA Nos. A95-240-781
A95-240-782
A95-240-783

HUMBERTO MONTEALEGRE-LOPEZ,
MARIA VICTORIA ALZATE-DIAZ, et. al.,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

Petition for Review of a Decision of
the Board of Immigration Appeals

**(July 18, 2005)**

Before TJOFLAT, HULL and WILSON, Circuit Judges.

PER CURIAM:

Humberto Montealegre-Lopez ("Montealegre"), his wife, Maria Victoria Alzate-Diaz, and their son, Juan Pablo Montealegre-Alzate (collectively, "Petitioners") are natives and citizens of Colombia, S.A. They were admitted into the United States as nonimmigrant visitors for pleasure on October 7, 1999, and were authorized to remain in the United States for a temporary period of time not to exceed April 6, 2000. They nonetheless remained in this country without authorization beyond that date.

On April 30, 2002, the Immigration and Naturalization Service ("INS") commenced removal proceedings, alleging that Petitioners had remained in the United States longer than permitted in violation of section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B). At an initial hearing before an Immigration Judge ("IJ") on August 2, 2002, Petitioners conceded removability, and requested relief from removal in the forms of asylum, withholding of removal under the INA, and protection under the Convention Against Torture ("CAT").[1] The IJ made a preliminary finding that Petitioners were ineligible for asylum, due to the untimely filing of their application, but said he would consider any evidence they might produce—showing changed

---

[1] Montealegre is the lead petitioner for purposes of asylum; his wife and child are beneficiaries of his asylum application.

conditions in Colombia or extraordinary circumstances—to excuse the untimeliness. The IJ therefore continued the hearing for that purpose.

On August 14, 2003, the hearing resumed. The IJ began the hearing by noting that the application for asylum was untimely. The IJ then stated that he would consider Montealegre's application for withholding of removal and CAT protection.[2] Despite the IJ's denial of Petitioner's asylum application, Montealegre presented evidence, including his own testimony, in support of the application. After the hearing was over, Montealegre submitted a "Memorandum in Support of a Determination of the Existence of an Exception to the One Year Filing Requirement" (for asylum), in which he asserted that "changed conditions" and "changed circumstances" excused his untimeliness. The excuse was specifically that he applied for asylum within a reasonable time after learning of the requirements of the asylum process. This belated discovery, he contended, constituted "changed conditions." Attached to the memorandum were articles that arguably supported his position.

The removal hearing concluded on October 16, 2003. The IJ adhered to his earlier decision that the asylum application was untimely. He held alternatively

---

[2] Because they were not "derivative," the IJ would not consider Montealegre's wife and son eligible for withholding of removal or CAT relief.

that the evidence Montealegre adduced was insufficient to warrant granting Petitioners asylum. The IJ also denied Montealegre's application for withholding under the INA and CAT.

Montealegre appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). The BIA adopted and affirmed the IJ's decisions, concluding that Montealegre failed to meet his burden of (1) showing changed circumstances or extraordinary circumstances to excuse the untimeliness of Petitioners' asylum application and (2) satisfying the requirements for withholding of removal or CAT protection.[3] Petitioners thereafter filed this petition for review.[4]

I.

Petitioners contend that the BIA erred in finding that they failed to demonstrate changed or extraordinary circumstances that excused the untimeliness of their asylum application. They argue that they filed the application in 2002, shortly after discovering the existence of the asylum procedures and filing deadlines. They submit that the drafters of the one-year filing requirement

---

[3] The BIA also denied Montealegre's motion to remand the case to the IJ for the consideration of further evidence. This ruling is not challenged here.

[4] Because these immigration proceedings commenced after April 1, 1997, the permanent rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996) ("IIRIRA"), govern our review.

anticipated that aliens would be notified of the asylum process and the one-year deadline.

An alien may apply for asylum if he "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." INA § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B). However,

> [a]n application for asylum of an alien may be considered . . . if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified . . . .

INA § 208(a)(2)(D), 8 U.S.C. § 1158(a)(2)(D). Nevertheless, "no court shall have jurisdiction to review any determination of the Attorney General under section 1158(a)(2)." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (quoting INA § 208(a)(3), 8 U.S.C. § 1158(a)(3)). Section § 1158(a)(3) consequently divests us of jurisdiction to review "a decision regarding whether an alien complied with the one-year time limit or established extraordinary circumstances that would excuse his untimely filing." Mendoza, 327 F.3d at 1287 (citing Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1217-18 (11th Cir. 2002)).

Because the instant application was untimely, we lack jurisdiction to consider Petitioners' challenge to the BIA's denial of asylum. That portion of the petition for review is therefore dismissed. INA § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B); See Mendoza, 327 F.3d at 1287. We nevertheless consider Montealegre's challenge to the denial of withholding of removal. See Mendoza, 327 F.3d at 1287.

## II.

Montealegre says that his removal should be withheld because he presented documentary and testimonial evidence showing that he suffered past persecution and has a well-founded fear of future persecution on the basis of his political opinion. That evidence showed that he was approached at his print shop by members of the guerilla group, the Revolutionary Armed Forces of Colombia ("FARC"), ordered to help the FARC by printing certain materials, and told to cease his support of political groups. When he refused to do so, the FARC threatened him because of his political opinion, specifically, his pro-democracy and anti-guerilla beliefs. This evidence, he submits, established that he was persecuted on account of his imputed political opinion. Furthermore, the evidence compels the conclusion that the threats he received were directly related to his refusal to comply with the FARC's demands. Moreover, he could not avoid the

persecution by relocating, because the threat of persecution exists on a countrywide basis. Montealegre takes issue with the IJ and BIA's conclusion that he failed to meet his burden of establishing that it was more likely than not that he would be persecuted upon returning to Colombia. He maintains (1) that he was targeted by the FARC because of his refusal to print counterfeit money and because of his support of his local political organization, and (2) that because the FARC had persecuted him in the past, and the record indicates that the FARC's power was far-reaching and that he would be targeted on a countrywide basis, it should be assumed that if he returned to Colombia, it is more likely than not that he will be persecuted on account of his imputed political opinion.

"We review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Insofar as the BIA adopts the IJ's reasoning, as occurred in the present case, we review the IJ's decision as if it were the BIA's. Id. To the extent that the IJ's decision was based upon a legal determination, we review the IJ's decision de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). We review the IJ's factual determinations under the substantial evidence standard, and "must affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at

7

1283-84; see also INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B)) ("administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary"). To reverse the IJ's decision, we must conclude that the record not only supports such a conclusion, but compels it. INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1, 112 S.Ct. 812, 815 n.1, 117 L.Ed.2d 38 (1992).

In a withholding of removal claim, an alien shall not be removed to a country if his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). The alien must show that it is "more likely than not that [he] will be persecuted or tortured upon being returned to [his] country." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005), superseding 378 F.3d 1260 (11th Cir. 2004).

Although the INA does not define persecution, courts have generally held that persecution is "punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate." See, e.g. Tamas-Mercea v. Reno, 222 F.3d 417, 424 (7th Cir. 2000). "[P]ersecution encompasses more than threats to life or freedom; non-life threatening violence and physical abuse also fall within this category." Id. Mere harassment is not persecution;

8

moreover, persecution requires "more than a few isolated incidents of verbal harassment or intimidation." Sepulveda,401 F.3d at 1231; see also Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000) (persecution "must rise above unpleasantness, harassment, and even basic suffering"). Furthermore, "[i]t is not enough [that the alien] show that [he] was or will be persecuted or tortured due to [his] refusal to cooperate with the guerillas." Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004).

The applicant also must establish a causal connection between his political opinion and the feared persecution, presenting "specific, detailed facts showing a good reason to fear that he will be singled out for persecution on account of such an opinion." Al Najjar, 257 F.3d at 1287 (quotation marks and citations omitted). "Where an applicant is unable to meet the 'well-founded fear' standard for asylum, he is generally precluded from qualifying for either asylum or withholding of deportation." Id. at 1292-93.

In the case at hand, substantial evidence supports the IJ and BIA's decision that Montealegre was not entitled to withholding of removal under the INA. First, there is no evidence in the record that he was persecuted when he was in Colombia such that it could reasonably be said that he would face persecution or torture if he returned to Colombia. The threatening telephone calls and letters that he and his

9

relatives received did not constitute persecution because, as we have noted above, a few isolated incidents of verbal harassment or intimidation does not rise to the level of persecution. See Sepulveda, 401 F.3d at 1231.

Even if Montealegre had demonstrated that he suffered persecution, he has not shown a causal connection between his political opinion and the feared persecution; he has failed to present "specific, detailed facts showing a good reason to fear that he will be singled out for persecution on account of [his political] opinion." Al Najjar, 257 F.3d at 1287 (quotation marks and citations omitted). He says that the persecution began when he refused to print materials for the FARC. All this means is that the guerillas harassed him and his family because they refused to cooperate, which is not enough to establish that they were harassed on account of their political opinion. See Elias-Zacarias, 502 U.S. at 482-83, 112 S.Ct. at 815-16; Sanchez, 392 F.3d at 438.

In sum, substantial evidence supports the IJ and BIA's finding that Montealegre failed to establish that he suffered past persecution or had a well-founded fear of future persecution on account of his political activities. 8 C.F.R. § 208.13(b)(1), (2); see Al Najjar, 257 F.3d at 1287. Because he did not meet the standard for asylum, he could not meet the higher burden of proof for withholding of removal. See Al Najjar, 257 F.3d at 1292-93.

PETITION DISMISSED, IN PART, DENIED, IN PART.