PUBLISH

F I L E D
United States Court of Appeals
Tenth Circuit

DEC 31 2003

PATRICK FISHER
Clerk

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

VALENTINA VATULEV,

    Petitioner,

v.

JOHN ASHCROFT,

    Respondent.

No. 02-9573

---

**PETITION FOR REVIEW OF AN
ORDER FROM THE
BOARD OF IMMIGRATION APPEALS
(BIA No. A76 468 193)**

---

Submitted on the briefs:

Jim Salvator, Lafayette, Colorado, for Petitioner.

Linda S. Wernery, Senior Litigation Counsel, William C. Minick, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for Respondent.

---

Before **SEYMOUR**, **BRISCOE**, and **LUCERO**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

Petitioner Valentina Vatulev, a Moldovan citizen of Russian descent, seeks review of a Board of Immigration Appeals (BIA) order adopting the decision of an Immigration Judge (IJ) denying her application for asylum. Petitioner also applied for withholding of removal, but has focused exclusively on asylum ever since the IJ initially denied all relief. We hold that petitioner has failed to carry the heavy burden placed on those challenging adverse asylum determinations, and we therefore deny her petition for review. [1]

To secure asylum, petitioner had to prove that she is a refugee as defined in 8 U.S.C. § 1101(a)(42)(A), and then persuade the Attorney General to exercise the discretionary authority to grant relief under 8 U.S.C. § 1158(b). *Krastev v. INS*, 292 F.3d 1268, 1270-71 (10th Cir. 2002). Because her application failed on refugee status, our review is limited, in breadth, to that threshold determination. *Id.* at 1271. Our review is further limited, in depth, to evaluating whether the record on the whole provides substantial support for that determination or, rather, is so decisively to the contrary that a reasonable factfinder would have concluded petitioner is a refugee. *Id.* at 1275.

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

There are three ways to establish refugee status, two of which are pertinent here: "One way is by showing [the applicant] has a well-founded fear of future persecution. A second way is by establishing that he or she has suffered past persecution, which gives rise to a [rebuttable] presumption that he or she has a well-founded fear of future persecution . . . ." *Id.* at 1270 (quotation and citation omitted). The persecution involved must be "on account of [the applicant's] race, religion, nationality, membership in a particular social group, or political opinion," *id.* (quotation omitted), and must be imposed by the government or by groups "which the government is unwilling or unable to control," *id.* at 1275 (quotation omitted). Petitioner claims she has been, and if returned to Moldova will continue to be, persecuted on account of her native Russian background by the Moldovan government and Moldovan nationalist groups tolerated if not sanctioned by the government. On its face, this claim is cognizable under the asylum statute. Thus, our disposition turns on whether petitioner presented evidence sufficient to compel a reasonable factfinder to accept her version and legal characterization of the events prompting her application for asylum.

The IJ had two primary sources for the relevant facts. Petitioner testified about Moldovan discrimination against Russians generally, and about acts of violence toward her and her family in particular. The Immigration and Naturalization Service (INS) submitted a State Department "Country Report" on

Moldova, which provided context by summarizing the prevailing political and social conditions in the country. The IJ credited petitioner's testimony as far as the basic events she related, but largely discounted the political significance she attributed to them. In the end, the IJ concluded that the matters that clearly did reflect official or officially tolerated anti-Russian conduct did not rise to the level of persecution.

Petitioner's claim was hampered by significant factual omissions in her testimony. In connection with her most serious complaints, regarding four incidents of actual or threatened violence toward her son, husband, and herself over a span of about six years, she did not testify about any associated indicia of ethnic persecution [2]–to distinguish them from acts of common criminality or personal hostility that do not implicate asylum eligibility, *see, e.g.*, *Kharkhan v. Ashcroft*, 336 F.3d 601, 605 (7 th Cir. 2003); *Zayas-Marini v. INS*, 785 F.2d 801, 805-06 (9 th Cir. 1986). Two of the incidents, her son's kidnaping-for-ransom and her husband's mugging, clearly involved financial extortion from petitioner's

---

[2] Petitioner argues that the IJ erred by giving dispositive weight to the fact that she could not identify the perpetrators. We agree with petitioner that ethnic or political persecution can be established just as well by showing an attack was directed at a victim's identity as by showing that it stemmed from the identity of the perpetrators. But here the IJ examined the record for indicia of persecution in both respects and simply found it lacking–petitioner had failed to show *either* that the perpetrators acted on the basis of their (unknown) political/ethnic identity *or* that they targeted petitioner's family because of hers. *See* Admin. R. at 90.

family (which, with two employed engineers, was relatively well-to-do). The other two incidents, in which her husband was assaulted and she suffered a blow to the head, did not involve obviously criminal incentives, but she did not offer any details of the attacks to show that something larger than personal hostility was involved. While the IJ could have inferred that the family's Russian background played a role, we cannot say such an inference had to be drawn.

In contrast, petitioner explicitly stated that ethnic discrimination was evident in certain state institutions. She insisted that official disfavor of Russians precluded her children's attendance at state colleges. We note, however, that her children were able to attend private colleges. Similarly, while she testified that state jobs are withheld from Russians, she and her husband were able to secure employment. We agree with the IJ and BIA that the institutional discrimination described by petitioner, while deplorable in any free society, did not constitute persecution affording petitioner eligibility for asylum. *See, e.g.*, *Ouda v. INS*, 324 F.3d 445, 450 (6 th Cir. 2003); *Bucur v. INS*, 109 F.3d 399, 402 (7 th Cir. 1997); *see also Woldemeskel v. INS*, 257 F.3d 1185, 1191 (10 th Cir. 2001) (actual or feared employment discrimination, including termination, does not, without more, constitute persecution).

Petitioner testified that her family received many threatening phone calls. Despite several opportunities to elaborate, however, she did not provide details

about the threats and never established a concrete connection between these calls and any overt violence or mistreatment. Threats alone generally do not constitute actual persecution; only rarely, when they are so immediate and menacing as to cause significant suffering or harm in themselves, do threats per se qualify as persecution. *Mendez-Gutierrez v. Ashcroft,* 340 F.3d 865, 869 n.6 (9 th Cir. 2003); *Boykov v. INS*, 109 F.3d 413, 416 (7 th Cir. 1997). Of course, unfulfilled threats are still properly considered in determining whether a petitioner has a reasonable fear of future persecution. *Lim v. INS*, 224 F.3d 929, 936 (9 th Cir. 2000); *Boykov*, 109 F.3d at 416. Even for this purpose, however, the vague and conclusory nature of petitioner's testimony undercut its probative value. *See Boykov*, 109 F.3d at 417 (upholding BIA's determination that vague testimony about anonymous phone threats was insufficient to establish fear of future persecution). She did relate more detail about a threatening letter the family received, which stated that her son would be killed, followed by her husband and her daughter. But the sheer length of time–nearly ten years–that has passed since receipt of that threat diminishes its present significance.

Petitioner also testified about a few incidents related to her by her husband, who remained in Moldova when she left in 1998. He told her that he found a note on the door saying "leave you Russian pig," that his mailbox had been broken and trash had been left by the door, and that someone wrote "Vatulev is a kike" at his

-6-

workplace. Such ethnic slurs and petty vandalism are odious, but, again, they fall far short of what would compel a reasonable factfinder to rule in favor of petitioner's claim of persecution. *See Singh v. INS*, 134 F.3d 962, 969 (9 th Cir. 1998) (holding several incidents of theft and vandalism insufficient to compel finding of persecution).

Larger cultural forces can imbue individualized conflicts or threats with more (or less) substance than they may suggest on their face. *Hoxha v. Ashcroft*, 319 F.3d 1179, 1182-83 (9 th Cir. 2003) ("The more egregious the showing of group prosecution–the greater the risk to all members of the group–the less evidence of individualized persecution must be adduced." (quotation omitted)). In *Hoxha*, for example, an ethnic Albanian who could not show past persecution on the basis of unfulfilled Serb threats directed specifically at him was able to buttress his entitlement to asylum on fear-of-persecution grounds with evidence, including a State Department profile of conditions in Serbia, that "provide[d] a lengthy and grisly documentation of the numerous atrocities committed against ethnic Albanians." *Id.* at 1182-84. We have nothing like that here, however. Indeed, the relative order and improving social/political conditions summarized in the Country Report on Moldova would attenuate, not amplify, any potential threat of cognizable persecution behind petitioner's personal experiences. *Cf. Dandan*

*v. Ashcroft* , 339 F.3d 567, 575 (7 th Cir. 2003);   *Molina-Estrada v. INS*   , 293 F.3d 1089, 1095-96 (9 th Cir. 2002).

In light of the foregoing, we cannot say the IJ's conclusion that petitioner failed to qualify as a refugee is contrary to what a reasonable factfinder would have been compelled to conclude.  Under our deferential review of immigration decisions, we must affirm.

There is one last matter to address.  Petitioner contends that, as a result of applying its streamlined review procedure, the BIA improperly failed to consider two additional items of evidence (threatening letters received by her husband) that she submitted following the IJ's decision.  Petitioner's own procedural omissions deprive us of jurisdiction to review this claim of error.

After she appealed the IJ's decision to the BIA, petitioner filed a motion for reconsideration, to which she attached the letters in question.  The IJ denied the motion, and petitioner did not appeal the denial of the motion or the IJ's implicit rejection of the new evidence.  And she did not mention the new evidence in her brief on appeal from the IJ's asylum decision.  In criticizing the BIA's adoption of the IJ's decision because the BIA did not address this evidence, petitioner projects onto the BIA her own procedural omission.  We agree with the Commissioner that judicial review of the matter is barred by petitioner's failure to comply with the mandatory requirement that she exhaust administrative remedies.

*See Nguyen v. INS*, 991 F.2d 621, 623 n.3 (10 th Cir. 1993); *Rivera-Zurita v. INS*, 946 F.2d 118, 120 n.2 (10 th Cir. 1991).

The petition for review is DENIED.