**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 14 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MOLY INTHASITH,

Petitioner,

v.

JOHN ASHCROFT, Attorney General
of the United States,

Respondent.

No. 02-9552
(BIA No. A70-201-555)
(Petition for Review)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL** , **BALDOCK** , and **LUCERO** , Circuit Judges.

---

Petitioner Moly Inthasith is a native and citizen of Laos. He seeks review

of a Board of Immigration Appeals (BIA) order, which summarily affirmed

a decision of an immigration judge (IJ) denying his application for asylum and

withholding of removal.

---

\* After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination
of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

Inthasith entered the United States in 1992 pursuant to a valid B-2 nonimmigrant visa, with authorization to remain until March 1, 1993. Shortly after his arrival, he timely filed a request for asylum and withholding. In 1998, the Immigration and Naturalization Service (INS)[1] issued a notice to appear, charging him with remaining in the United States without INS authorization. Inthasith admitted the allegations in the notice to appear, conceded removability, declined to designate a country for removal, and sought asylum and withholding of removal. Following a hearing, the IJ issued an oral decision denying the applications for asylum and withholding of removal, but granting Inthasith's request for voluntary departure. The BIA, by a single member, summarily affirmed the IJ's decision. Inthasith appealed. Exercising jurisdiction under 8 U.S.C. § 1252(a), we AFFIRM.

## I

Inthasith testified that he was born in 1958 and raised in Laos. His father was a soldier until 1980 on "the old government side" and absent from the home for long periods of time. Admin. R. at 69–70. His mother was a homemaker and Inthasith had only two or three years of education, after which he worked in

---

[1] "The INS ceased to exist on March 1, 2003, and its functions were transferred to the U.S. Citizenship and Immigration Services ('USCIS') within the newly formed Department of Homeland Security." Batalova v. Ashcroft, 355 F.3d 1246, 1248 n.1 (10th Cir. 2004).

agriculture and helped his mother farm. When he was eighteen, he began buying and selling goods, primarily agricultural products, but also illegal weapons "once or twice." Id. at 72.

Inthasith testified that he disagrees with the current government because "they cause[d] my family to flee the country." Id. at 73. He told his uncle that he did not like the government. Although he trusted his uncle at the time, Inthasith asserted that the uncle had "changed and he is now on the same side as [the current, i.e., communist,] government." Id. at 74. Inthasith further related that his uncle had warned him to flee Laos and his mother told him he could not return to Laos.

Additionally, Inthasith testified that while in Laos he helped those who fled the country and tried to fight back to free Laos. His assistance included giving money to help people cross between Thailand and Laos and arranging border crossings, but did not extend to armed resistance or public opposition to the government. He asserted that he left Laos because he thought a government group was watching him; this "group" had questioned him about where he was going and what he was doing. Id. at 76–77. He knew many others who had trouble with the government, including a friend who was shot to death. However, Inthasith was never arrested, hurt, or tortured in Laos, and he left with a valid passport and a ticket in his own name.

Inthasith's family now lives in Thailand. Shortly after Inthasith left Laos in 1992, his father, younger brother, and three-year old son died. Although Inthasith stated he did not know how they died, he suspected they were poisoned because they all died at the same time. The only reasons he could think of for these supposed killings, however, were that "they did something" "to get in trouble" or because his father had been a soldier some years before. Id. at 87. Inthasith testified that he thought that if he returned to Laos, he would be captured by the government and killed. He also believed that he would be treated differently by the government, i.e., as an enemy, because of his world travels.

## II

In addition to Inthasith's testimony, the IJ considered reports on human rights conditions in Laos (United States State Department Country Reports), which contained no reports of political killings for 1997 or politically motivated disappearances. However, the IJ noted that freedom of speech is restricted, there is no right to privacy, and persons expressing hostility toward the government are subject to arrest. Nonetheless, the 1997 Country Report reflects that many Laotian refugees have returned and that there is no evidence that any of them were punished for simply leaving the country.

The IJ first determined that Inthasith had not alleged past persecution, "but only a reasonable possibility of future persecution." Id. at 39. This finding

is supported by counsel's statement at the hearing that "we do not claim that [Inthasith] suffered past persecution." Id. at 92. The IJ further determined that the record did not support a credible claim of future persecution, primarily because Inthasith's facts were vague, even though he had the opportunity to provide specific facts regarding the supposed poisoning of his family members and the opposition group he was allegedly helping with border crossings. The IJ emphasized that Inthasith had never been arrested or harmed. Noting Inthasith's belief that his uncle had reported Inthasith's anti-government activities, the IJ found Inthasith's claim that mere grumbling to a relative, even a communist party member, would result in his custody and death to be farfetched. In addition, the IJ expressed serious doubt that Inthasith would tell anyone in a government position that he was providing funding to insurgents.

On appeal, Inthasith contends that he qualified as a refugee because of the deaths of his family members (which he labeled as killings) and because of alleged surveillance of him by government authorities. He further argues that the IJ erred in relying on the Country Reports "to the exclusion of other documentary evidence." Finally, he challenges the BIA's summary disposition of his appeal.

## III

To establish eligibility for asylum, Inthasith must first prove he was a refugee as defined in 8 U.S.C. § 1101(a)(42)(A). Vatulev v. Ashcroft, 354 F.3d 1207, 1208 (10th Cir. 2003). The statute defines a refugee as a person unable or unwilling to return to his home country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Inthasith bears the burden of proving statutory eligibility. See Woldemeskel v. INS, 257 F.3d 1185, 1188 (10th Cir. 2001). Because this case does not involve past persecution, Inthasith needed to show a well-founded fear of future persecution. This required him to first demonstrate an objective basis for such fear by "credible, direct, and specific evidence in the record, of facts that would support a reasonable fear [of] . . . persecution." Yuk v. Ashcroft, 355 F.3d 1222, 1233 (10th Cir. 2004) (further quotations omitted). "Once an objective basis is shown, [Inthasith] must show that his . . . subjective fear is genuine." Id.

The IJ determined that Inthasith had failed to meet his burden of establishing refugee status. When the BIA summarily affirms an IJ's decision, we review the IJ's analysis as if it were that of the BIA. Tsevegmid v. Ashcroft, 336 F.3d 1231, 1235 (10th Cir. 2003). Our standard is deferential. We review the IJ's resolution of initial refugee status for substantial evidence and must

-6-

uphold the IJ's determination that Inthasith is not eligible for asylum if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Yuk, 355 F.3d at 1233 (further quotations omitted). To establish grounds for reversal, Inthasith "must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 483–84 (1992). We do not, however, weigh the evidence, nor do we "question the [IJ's] credibility determinations as long as they are substantially reasonable." Woldemeskel, 257 F.3d at 1192.

To the extent Inthasith may be relying on the deaths of family members in support of a reasonable fear of future persecution, the IJ found this testimony lacked credibility. The reasons given for this finding–lack of specific facts, no reports of political killings–satisfy our requirement that credibility determinations "must be substantially reasonable." Sviridov v. Ashcroft, 358 F.3d 722, 727 (10th Cir. 2004) (citation omitted). The IJ also noted that Inthasith's description of his assistance to some group opposed to the government was very vague and lacking in details. In addition, the Country Reports relied on constitute probative evidence in a well-founded fear case. See Tsevegmid, 336 F.3d at 1235–36. Contrary to Inthasith's claim, the record simply does not establish Inthasith participated in "opposition activities which might subject the family to possible

sanctions." Aplt. Br. at 20. Accordingly, the IJ's factual findings are conclusive because Inthasith has failed to demonstrate that any reasonable adjudicator would be compelled to conclude to the contrary. See Tsevegmid, 336 F.3d at 1235 (quotations omitted).

The IJ also denied Inthasith's application for withholding of deportation. For entitlement to withholding, Inthasith must establish "a clear probability of persecution, . . . a higher standard than that for asylum." Yuk, 355 F.3d at 1236 (quotation omitted). "Because Inthasith[] failed to meet the lower standard of showing entitlement to asylum, the IJ correctly denied [his] application for withholding of removal." Id.

Finally, we have upheld the BIA's summary affirmance procedures against various challenges. See Yuk, 355 F.3d at 1228–32 (upholding summary affirmance regulations as comporting with due process and administrative law principles); Batalova v. Ashcroft, 355 F.3d 1246, 1251–54 (10th Cir. 2004) (upholding review by single BIA member); Sviridov, 358 F.3d at 726–27 (upholding BIA's procedures against claim that BIA failed to comply with applicable regulations and denied Inthasith due process).

## IV

We have carefully examined the record and conclude that the IJ's credibility determinations are substantially reasonable. See Woldemeskel,

257 F.3d at 1192. In addition, the IJ's decision is "supported by reasonable, substantial and probative evidence on the record as a whole" and will be upheld for that reason. Id. at 1189. For these reasons, we DENY the petition for review and AFFIRM the BIA's decision to deny asylum and withholding of deportation.

Entered for the Court


Carlos F. Lucero
Circuit Judge