F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**JUN 29 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

YELENA SURENOVNA
TATULYAN; ANDREY
ASHOTOVICH TATULYAN;
ASHOTA TATULYAN,

　　　　Petitioners,

v.

JOHN ASHCROFT,

　　　　Respondent.

No. 03-9555
(INS Nos. A76-913-118;
A72-452-930; A76-913-119)
(Petition for Review)

---

**ORDER AND JUDGMENT** *

---

Before **HENRY** , **MURPHY** , and **TYMKOVICH** , Circuit Judges.

---

　　　　Petitioners, a family of Russian citizens of Armenian descent, seek review

of a Board of Immigration Appeals (BIA) order adopting the decision of an

Immigration Judge (IJ) denying their applications for asylum, withholding of

removal, and relief under the Convention Against Torture. Here, because the BIA

summarily adopted the IJ's opinion without analysis, we review the IJ's decision

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

as the final agency decision. *See Yuk v. Ashcroft*, 355 F.3d 1222, 1230 (10th Cir. 2004). Our jurisdiction over this petition for review arises from 8 U.S.C. § 1252(a)(2)(B)(ii). Petitioners raise four issues. Two challenge the IJ's decision on the merits; our review of these issues is for substantial evidence in the record as a whole. *See Sviridov v. Ashcroft*, 358 F.3d 722, 727 (10th Cir. 2004). The remaining two issues challenge the BIA's summary affirmance procedures. We review these legal issues *de novo. See Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004). [1]

Addressing the latter issues first, petitioners contend that the issuance of a decision without opinion by only one member of the BIA violates their due process rights and fails to comply with relevant regulatory provisions. These arguments are controlled and foreclosed by this court's opinion in *Yuk*, 355 F.3d at 1232. To the extent that petitioners' argument about the application of relevant regulations depends on an analysis of the merits, it is rejected for the reasons stated below. *See Sviridov*, 358 F.3d at 727.

Petitioners lawfully entered the United States in 1996, but did not seek asylum until 1999, when petitioner Yelena Tatulyan filed an application for

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this petition for review. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

herself and her son, Ashota. Her husband, petitioner Andrey Tatulyan, made several lengthy annual trips back to Russia, extending his entry date to July 23, 1999. He filed a timely application for asylum in March of 2000, including his son on that application. Shortly after Ashota attained twenty-one years of age, he filed a protective application for asylum in February of 2001.

At their hearing before the IJ, the timeliness of these applications was considered as an initial matter. Although not included in the transcript of his oral decision, the IJ ruled at the hearing that, unless qualifying reasons were shown for the delay, Yelena's application was untimely, making her ineligible for asylum on that application. The IJ also ruled that Andrey's application was timely, making both he and Ashota eligible for asylum. Further, the IJ ruled that Yelena could also be eligible through her husband's application, as a dependent. *See* Cert. Admin. R. at 152. Therefore, Ashota and Yelena's requests for asylum or other relief were dependent upon Andrey's application, and the issue before the IJ was whether Andrey qualified for the relief he sought. *See Yuk,* 355 F.3d at 1224 n.2.

At the hearing, both Yelena and Andrey testified as to threats and violence perpetrated against them and their son by Cossack forces as a result of their ties to Sevan, an Armenian group, and their support for Armenian refugees. Thereafter, the IJ issued his oral ruling. The IJ first determined that the Tatulyans' testimony was not credible because it was not "sufficiently detailed,

consistent, or believable." Cert. Admin. R. at 114. Petitioners challenge this adverse credibility determination as one based on erroneous factual findings and personal speculation. We review adverse credibility determinations for substantial evidence in the record. *See Dia v. Ashcroft*, 353 F.3d 228, 247-50 (3d Cir. 2003) (discussing standards). An IJ must give "specific, cogent reasons" for disbelieving a petitioner's testimony. *See Sviridov*, 358 F.3d at 727 (quotation omitted). Our review of the record in this case leads us to conclude that there is no reasonable support for the IJ's credibility determination.

First, Yelena Tatulyan's testimony was very specific and detailed, even as to the dates of the various incidents she described. The IJ's summary of her testimony covers more than four pages of his decision. Second, the only inconsistencies noted by the IJ–whether Yelena visited friends or relatives in a hospital and whether Andrey was a volunteer or elected Board member of Sevan–are matters of little or no consequence in relation to the incidents of violence to which petitioners testified, and therefore do not undermine the veracity of their testimony as a whole. Third, the IJ's conclusion that the testimony was not believable is unsupported. *Cf. Dia*, 353 F.3d at 249 (stating a conclusion of "implausibility" must be made against the background of general country conditions). Although we ordinarily defer to the IJ's credibility findings, such findings must be reasonably grounded in the record, and not "based on

speculation, conjecture, or an otherwise unsupported personal opinion." *Id.* at 250.[2]

Because we find no support in the record for the IJ's credibility determination, we are left with the conclusion that the Tatulyans suffered past persecution in Russia as a result of their ties to Sevan and their support of Armenian refugees. One way that petitioners can establish refugee status is to demonstrate past persecution, which "gives rise to a [rebuttable] presumption that he or she has a well-founded fear of future persecution." *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003). Nonetheless, that presumption in this case is rebutted by Andrey Tatulyan's lengthy annual visits to Russia during the three years after the Tatulyans came to this country and before they applied for asylum. *Cf.* 8 C.F.R. § 208.8(b) (providing that an alien who returns to a country of claimed persecution abandons his or her asylum application unless the alien can establish compelling reasons for the return). Our review of the record leads us to the conclusion that compelling reasons did not exist for Andrey Tatulyan's trips to Russia. Further, even if § 208.8(b) does not apply here in light of the timing of

---

[2] The IJ also stated, in a rather disparaging manner, that he did not believe the Tatulyans' reasons for delaying their applications for asylum, because, he said, they were sophisticated business people. We express no opinion on this point because the IJ previously determined that Andrey Tatulyan's application was timely. Further, this comment does not cast doubt on the credibility of petitioners' testimony regarding the incidents in Russia that formed the basis of their claim to asylum.

Andrey Tatulyan's asylum application, we also conclude that his visits to Russia constitute substantial evidence in the record in support of the IJ's conclusion that petitioners failed to demonstrate a reasonable fear of future persecution. [3] *See Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 285 (4th Cir. 2004). We hold that petitioners have failed to carry the heavy burden placed on those challenging adverse asylum determinations. *See Batalova v. Ashcroft*, 355 F.3d 1246, 1255 (10th Cir. 2004). [4]

Having failed to demonstrate their eligibility for asylum, petitioners also fail to establish entitlement to withholding of removal which entails a higher standard than asylum. *See id.* Finally, petitioners have not demonstrated

---

[3] The IJ also concluded that petitioners did not demonstrate a fear of future persecution because the State Department Report said that there were areas of Russia where Armenians could live peacefully, even though the Cossacks continue to cause problems. Cert. Admin. R. at 116. We have read the State Department Report in the record and we agree with petitioners that nothing in that report supports the IJ's statement on this point.

[4] Petitioners have submitted a supplement to the Certified Administrative Record, contending that certain exhibits were omitted from that record. Respondents contend that the submitted exhibits were not part of the official record. Regardless, because the submitted exhibits are not relevant to the point on which this decision turns, we need not resolve that question.

entitlement to relief under the Convention Against Torture. *See id.* The petition for review is DENIED.

Entered for the Court


Michael R. Murphy
Circuit Judge