**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

YUDI WIRIADI LIM,

      Petitioner,

  v.

ALBERTO R. GONZALES [*],

      Respondent.

No. 04-9558
(Agency No. A79-478-178)
(Petition for Review)

**ORDER AND JUDGMENT** [**]

Before **HENRY**, **BRISCOE**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]    On February 4, 2005, Alberto R. Gonzales became the United States Attorney General. In Accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Mr. Gonzales is substituted for John Ashcroft as the respondent in this action.

[**]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Yudi Wiriadi Lim requests this court to review the decision of the immigration judge (IJ) denying him asylum based on his failure to demonstrate "a well-founded fear of future persecution" on account of a protected ground under the asylum statute. Our jurisdiction arises under 8 U.S.C. § 1252(a)(1), and we deny the petition for review.

Before being considered for asylum, an applicant must prove that he or she is a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A). "Because [Lim's] application failed on refugee status, our review is limited, in breadth, to that threshold determination. Our review is further limited, in depth, to evaluating whether the record on the whole provides substantial support for that determination or, rather, is so decisively to the contrary that a reasonable factfinder would have concluded petitioner is a refugee." *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003) (citations omitted).

In order for an alien to become eligible for consideration for asylum, the possible persecution he or she faces can come from either the government or "from a non-government agency which the government is unwilling or unable to control." *Estrada-Escobar v. Ashcroft*, 376 F.3d 1042, 1046 (10th Cir. 2004) (quotation omitted). "[P]ersecution requires the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and requires more than just restrictions or threats to life and liberty."

*Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004) (quotations omitted). Because petitioner's claim is based on an allegedly well-founded fear of future persecution, it must also contain "both a subjective and an objective component." *Woldemeskel v. INS,* 257 F.3d 1185, 1188 (10th Cir. 2001). "Mere generalized lawlessness and violence between diverse populations . . . generally is not sufficient to permit the Attorney General to grant asylum." *Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998). Nor do acts of common criminality or personal hostility implicate asylum eligibility. *Vatulev*, 354 F.3d at 1209.

Petitioner, a native and citizen of Indonesia, is of Chinese descent and a Roman Catholic, placing him in two minority groups in his native country. He argues that he has a well-founded fear of future persecution[1] on account of his race and religion, thus establishing his status as a refugee. Petitioner testified that he was born in Pontianak in 1975 and that he changed his name from a Chinese surname to one more suitably Indonesian. He carries an identification card identifying him as ethnic Chinese and Christian. He was once beaten and cursed for being Chinese and pelted with stones which left a scar. His brother experienced a similar occurrence. To avoid being subjected to this type of violence, petitioner and his siblings attended a Catholic school composed of

---

[1] Petitioner does not contend on appeal that he has been the victim of past persecution.

-3-

nearly eighty percent Chinese.  He and his sister eventually converted to Catholicism, with the balance of the family remaining Buddhists.  Petitioner, a college graduate, attended a private university due to the extremely low quotas allowing admission to ethnic Chinese in Indonesia's public university system.

The record establishes an general climate of anti-Chinese violence which surged in the last half of 1998 and the first half of 1999.  During that time, murders, rapes, assaults, and the burning and looting of property – all mainly directed at the ethnic Chinese population – went largely unchecked by the government.  At the height of the violence, petitioner hid with his sister in Jakarta where he had gone for a job interview but was eventually able to return to Pontianak.  He secured a job in Jogja, but described his life as very restricted.  He only went out to go to work or to church and never in the evenings.  He testified to never having days where he felt safe.

The Immigration Judge (IJ) found petitioner's testimony to be generally credible especially with regard to his commitment to his Catholic faith.  The IJ noted that, despite suffering discrimination in education and employment, petitioner enjoys productive employment and a relatively high level of education.

During 2000, petitioner traveled to Thailand, Singapore, and Malaysia but always returned to Indonesia without seeking asylum in any of those countries. [2]

After hearing his testimony, the IJ found that petitioner feels fearful over the possible renewal of violence targeting Chinese and Christian people similar to that which occurred in 1998. The IJ acknowledged that the situation in Indonesia is dangerous for ethnic Chinese Christians but found that petitioner failed to establish past persecution based on accounts of isolated discrimination and harassment.

Turning to analysis of his fear of future persecution, petitioner argues that certain findings and conclusions in the record satisfied the objective component of a future-fear determination, *see Woldemeskel*, 257 F.3d at 1188. The IJ, however, explicitly refused to find an objective component to petitioner's fear, R. at 43, and further refused to find evidence of any subjective fear on the record, citing petitioner's free travel throughout Indonesia, his choice of home and job locations which require him to travel publically for significant periods of time, and his frequent trips to and from Indonesia even after the outbreak of the 1998 violence.

---

[2]     Petitioner argues there is no evidence in the record establishing that asylum programs were available in any of these countries. If that is the case, it was petitioner's burden to establish that lack of opportunity for asylum as it is his general lot to carry the heavy burden assigned those who challenge adverse asylum determinations. *See Vatulev,* 354 F.3d at 1208.

Because of these findings, the IJ held that petitioner had failed to meet the definition of refugee and could therefore not be considered a candidate for asylum, restriction on removal, [3] or relief under the United Nations Convention against Torture. Petitioner's administrative appeal to the Board of Immigration Appeals challenged only the denial of asylum.

After our review of this matter, we agree with the IJ that petitioner has failed to prove that he is a refugee as defined in 8 U.S.C. § 1101(a)(42)(A) and that the nature of petitioner's evidence of a well-founded fear of future persecution does not rise to the level necessary to attain asylum eligibility. Our evaluation of the record on the whole does not require a determination that any reasonable factfinder would conclude petitioner is a refugee. *See Vatulev*, 354 F.3d at 1209.

To the extent petitioner challenges respondent's streamlining review procedure, we note that this circuit, as have all circuits to have considered the issue, has expressly upheld the constitutionality of the affirmance-without-opinion process. *See Yuk*, 355 F.3d at 1232.

---

[3] "Restriction on removal was referred to as 'withholding of removal' before amendments to the INA made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104-208, 110 Stat. 3009." *Wiransane v. Ashcroft*, 366 F.3d 889, 892 n.1 (10th Cir. 2004).

In its brief to this court, respondent takes exception to the recent Ninth Circuit case, *Sael v. Ashcroft*, 386 F.3d 922 (9th Cir. 2004). Because we are not bound by precedent from other circuits, and because *Sael* is not dispositive of the case at bar, we decline to address respondent's arguments.

The petition for review is DENIED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge