[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 10, 2005
THOMAS K. KAHN
CLERK

No. 05-10221
Non-Argument Calendar

_____

Agency Nos. A95-886-842, A95-886-977

OSCAR AUGUSTO ACOSTA,
MARISOL PINA, et al.,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 10, 2005)

Before TJOFLAT, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Oscar Augusto Acosta, on behalf of himself, his wife, Marisol Pina, and his

two children, Rosman Alexis Acosta and Tania Nayibi Acosta, petitions for review of the Board of Immigration Appeals' order affirming the immigration judge's decision to deny his application for asylum as untimely.[1]  Mr. Acosta alone petitions for review of the BIA's order affirming the IJ's decision to deny his petition for withholding of removal and relief under the Convention Against Torture.  We dismiss his petition in part and deny it in part.

## I.

Acosta is a citizen of Colombia.  In 1998, he joined that country's Liberal Party in support of his local candidate for the senate, Jorge Munoz Pinzon.  Acosta aided Pinzon's campaign by transporting the candidate's campaign workers to political events on a bus he partially owned.  Acosta also helped to set up stages and pass out fliers at campaign rallies.

One day, while Acosta was driving a group of passengers unrelated to the campaign on his bus, he was stopped by a group of five men standing in the road. The men identified themselves as guerillas with the Revolutionary Armed Forces of Colombia (FARC).  They made Acosta and his passengers get off the bus, burned it, and then told Acosta that they were upset about his participation in Pinzon's campaign and that if they ever saw Acosta in the area again, he and his

---

[1] Acosta is the primary applicant for his asylum claim.  His wife and children are derivative applicants, and, therefore, rely on Acosta's application.  For that reason and for convenience of reference, we will only refer to Acosta with regard to that claim.

family would be in "great danger."

Acosta reported the incident to the police and his insurance company, who reimbursed him for the damage to the bus. He has had no contact with FARC since. Two months later, on February 11, 1999, Acosta and his family left Colombia and entered the United States on a six-month non-immigrant visa. He overstayed the visa and filed an application for asylum, withholding of removal, and relief under CAT more than three years later in July 2002.

The Immigration and Naturalization Service charged Acosta with removability, which he conceded. At the hearing on his application, the IJ found, after considering Acosta's testimony and documentary evidence, that Acosta's asylum application was filed after the permitted one-year window and that he did not establish by clear and convincing evidence any of the statutory exceptions to filing an application late. The IJ also found that Acosta was not entitled to withholding of removal and relief under CAT because he did not present evidence of past persecution or torture or a well-founded fear of persecution or torture as defined by the relevant statutes. The BIA adopted the IJ's findings as its own.

Acosta petitions for review of the BIA's decision. He contends that the BIA made two errors.

**II.**

First, Acosta contends that the BIA erred in deciding that his application was

untimely. Acosta argues that he sufficiently demonstrated one or both of the statutory circumstances that excuse a belated asylum application.

Assuming, without deciding, that Acosta is right, there is nothing that we can do. This Court is without jurisdiction to review the BIA's determination on the timeliness of an asylum application or on whether an applicant met one of the statutory circumstances that excuse late filing. See 8 U.S.C. § 1158(a)(3); Fahim v. U.S. Attorney Gen., 278 F.3d 1216, 1217–18 (11th Cir. 2002). We must, therefore, dismiss this part of Acosta's petition for lack of jurisdiction.

**III.**

Acosta's second contention is that the BIA got it wrong on his withholding of removal and CAT claims because, contrary to the IJ's finding, he showed that he had suffered persecution and torture according to the statutory definitions of those terms.

Unlike asylum, which the Attorney General may grant under his discretion, if an applicant meets the statutory requirements for withholding of removal or relief under CAT he is automatically entitled to stay in the United States. Thus, Acosta's withholding of removal and CAT claims are not subject to the one-year window.

Those claims, however, fail for the reasons stated by the BIA. Withholding of removal is appropriate if an applicant's life or freedom would be threatened in

4

his native country because of his race, religion, nationality, membership in a particular group, or political opinion. See 8 U.S.C. § 1231(b)(3)(A). The applicant bears the burden of demonstrating "that it is more likely than not that [h]e will be persecuted or tortured upon being returned to [his] country." Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1232 (11th Cir. 2005). If the alien establishes past persecution, it is presumed that his life or freedom would be threatened upon his return. 8 C.F.R. § 208.16(b). "Under this highly deferential standard of review, the [BIA]'s decision can be reversed only if the evidence compels a reasonable fact finder to find otherwise." Sepulveda, 401 F.3d at 1232 (quotation omitted).

Persecution is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Id. at 1231 (quotation marks and citation omitted). "Threats alone generally do not constitute actual persecution; only rarely, when they are so immediate and menacing as to cause significant suffering or harm in themselves, do threats per se qualify as persecution." Valutev v. Ashcroft, 354 F.3d 1207, 1210 (10th Cir. 2003). Further, "[t]o qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000).

The one isolated threat that Acosta points to as evidence in support of his withholding of removal claim is not persecution as envisioned by the immigration statutes. The 1998 bus incident was only a threat of violence; no actual harm came

5

to Acosta in the two months he remained in Colombia after the incident. In fact, Acosta never heard from the FARC guerillas again. This cannot be said to be "so immediate as to cause significant suffering or harm."

Nor has Acosta shown that he will be subject to future prosecution if forced to return to Colombia. Again, he has not heard from the guerillas since 1998. He is no longer associated with Pinzon or the Liberal Party. And, Acosta has been out of the country for six years, which seems like enough time for the memory of his minimal role in the 1998 senate campaign to have faded from the minds of the FARC guerillas.

The same is true with regard to Acosta's CAT claim. To be entitled to relief under CAT, the applicant must show that, more likely than not, he was tortured in the past or will be subject to torture upon return to his native country. Torture is defined as "an act causing severe physical or mental pain or suffering." 8 U.S.C. § 208.18(a)(1). Acosta's version of the 1998 incident, while disturbing, did not cause him or his family severe physical or mental pain or suffering. Nor, for the same reasons we stated above, did Acosta demonstrate that he will be subject to torture when he returns to Colombia.

Accordingly, we deny his petition for review of the BIA's order denying his application for withholding of removal and relief under CAT.

**PETITION DISMISSED IN PART AND DENIED IN PART.**

6