**F I L E D**

**UNITED STATES COURT OF APPEALS**

**May 16, 2007**

**FOR THE TENTH CIRCUIT**

FNU HERRY,

       Petitioner,

v.

ALBERTO R. GONZALES,
Attorney General,

       Respondent.

No. 06-9574
(No. A97-629-472)
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **McKAY**, and **ANDERSON**, Circuit Judges.

---

       Mr. Herry is a native and citizen of Indonesia. He petitions for review of

an order of the Board of Immigration Appeals (BIA) affirming the denial by the

---

[*]       After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

immigration judge (IJ) of his request for asylum, restriction on removal,[1] and

protection under the Convention Against Torture (CAT). Mr. Herry challenges

only the agency's denial of his claim for restriction on removal. He does not

raise any other challenges to the agency's decision.[2] We deny the petition for

review.

I

We review the BIA's legal conclusions de novo and review the agency's

findings of fact applying the substantial evidence standard. *Elzour v. Ashcroft,*

378 F.3d 1143, 1150 (10th Cir. 2004). Under the substantial evidence test, we

must determine whether the factual findings "are supported by reasonable,

substantial and probative evidence considering the record as a whole." *Id.*

Credibility determinations are subject to the substantial evidence test. *Id.*

"Where the BIA's decision relies upon an IJ's initial findings, we must ensure

that such determinations are substantially reasonable." *Uanreroro v. Gonzales*,

443 F.3d 1197, 1204 (10th Cir. 2006) (quotation omitted). These credibility

determinations will be upheld if the IJ provides "'specific, cogent' reasons" for an

---

[1]     Although the parties and the agency refer to "withholding of removal," this language was changed to "restriction on removal" with the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). Because this claim was filed after IIRIRA's effective date, we will use the term "restriction on removal." *See Yan v. Gonzales*, 438 F.3d 1249, 1251 n.1 (10th Cir. 2006).

[2]     Mr. Herry is not challenging the denial of his asylum or CAT claims. *See* Pet. Reply Br. at 1.

adverse credibility finding. *Wiransane v. Ashcroft*, 366 F.3d 889, 897 (10th Cir. 2004) (quoting *Sviridov v. Ashcroft*, 358 F.3d 722, 727 (10th Cir. 2004)). "The BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005) (quotation omitted).

II

The BIA adopted and affirmed the IJ's decision in a single-member brief order. *See* 8 C.F.R. § 1003.1(e)(5). In these circumstances, the BIA's decision is the final order under review, but we may consult the IJ's decision when it provides a more complete explanation of the grounds for the decision. *See Uanreroro*, 443 F.3d at 1204. With regard to the restriction on removal claim, the BIA stated:

> As we find that the Immigration Judge's adverse credibility finding is consistent with *Wiransane v. Ashcroft*; *Sviridov v. Ashcroft*; and *Vatulev v. Ashcroft*, controlling case law in the jurisdiction in which this matter arises, we adopt and affirm the Immigration Judge's finding that the respondent failed to carry his burden of proof to establish his eligibility for [restriction on] removal under the act.

Admin. R. at 2 (full citations omitted). Because the BIA adopted and affirmed the IJ's finding that Mr. Herry failed to meet his burden of establishing his eligibility for restriction on removal and because the BIA's discussion of this claim is limited, we look to the IJ's decision for a more complete explanation of the grounds for the decision. *See Uanreroro*, 443 F.3d at 1204.

-3-

Mr. Herry bears the burden of proof on his restriction on removal claim and he must establish that "his . . . life or freedom would be threatened in the proposed country on the account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.16(b). He may meet this burden by demonstrating that he suffered past persecution or that there is a "clear probability" of future persecution on account of one of the protected grounds enumerated above. *See id.*; *Niang*, 422 F.3d at 1195. Mr. Herry, who is of Chinese ethnicity and a Christian, sought to establish his eligibility for restriction on removal primarily on the basis of two incidents, which we will discuss below.

A

Mr. Herry testified that during the May 1998 riots, he was attacked by native Indonesians, tied up, and dragged behind a motorbike for approximately one hour. He stated that he was not sure exactly what happened and for how long because he passed out. When he woke up, he had injuries on his hands from being tied, his knees were skinned, and he had a cut on his face. He testified that he did not seek medical assistance after this incident because doctors are too expensive. To support his allegations regarding the motorcycle incident, Mr. Herry submitted a photograph allegedly taken after the incident. The following exchange then took place between the IJ and Mr. Herry:

-4-

Q. Okay. And you said you were dragged on the motorbike for one hour?

A. Approximately. I wasn't sure. It maybe is an hour.

Q. All right. Well, this does show that you have – your knees are skinned, and the left side of your face is skinned and bruised, but it – I'm not an expert on being dragged around on a motorcycle, but it doesn't look like you were dragged down the street for an hour.

A. I'm saying it took a long time because when your hands are tied and you're dragged behind a motorcycle, anytime seems like a long time. I don't know how long it actually took.

Q. Well, were you able to stay up on your feet most of the time? Is that what happened?

A. I was standing, but when they took off, I fell over right away.

Q. And then they dragged you down the street like that?

A. Yes. Maybe if I could have shown the rest of my pants, it would have shown what it did to my legs. But because it was cut, that portion of it I cannot show you. And –

Q. Is that the clothes you were wearing?

A. Yes.

Q. Well, they're clean. The shirt's clean, and it's not ripped. It's not possible you were dragged around for an hour on the ground wearing that shirt.

A. It felt to me it was an extremely long time, and that's why I said maybe it was an hour. I don't know how long it really took. And I passed– I lost consciousness, and that's why I don't remember how long it actually took.

Q. Yeah, but look at the shirt. It's – I think it's even ironed. It's absolutely clean and looks like it's a fresh shirt. It doesn't even look like you were working out in the garden, much less dragged around in the street.

A. I cannot answer that.

Q. Right.

A. I have completely forgotten. To tell you the truth, I don't even remember, but it could have been that I was wearing a jacket, and I still don't remember what I was wearing and why that was clean.

Admin. R. at 117-19.

At the end of the hearing, the IJ made the following findings with regard to

this portion of Mr. Herry's claim:

> I did think, however, that the respondent did not testify
> credibly as to what happened to him in Indonesia on account of his
> ethnicity and his religion. The respondent testified that he had been
> dragged around unconscious on a motorcycle through the streets for a
> period of an hour, and yet the respondent did not require medical
> assistance after this episode.
> The respondent provided a picture which he said it depicts him
> right after the episode in the clothes that he was wearing during the
> episode. The clothes are clean. They appear to even be well pressed.
> The respondent appears clean. He does have some scrapes and
> wounds on his knees and wrists and face, but it does not appear to
> this Court that it is the type of injuries which would accompany
> being dragged around for an hour through the streets. The Court
> believes that the respondent has embellished his testimony in this
> regard and does not find him to be credible regarding acts of past
> persecution.

*Id*. at 57-58.

Mr. Herry argues that the BIA erred in affirming the IJ's adverse crediblity

finding. As noted above, the BIA concluded that the IJ's determination was

consistent with controlling case law in this court, citing to *Wiransane*, *Sviridov*

and *Vatulev v. Ashcroft*, 354 F.3d 1207 (10th Cir. 2003). In *Sviridov*, this court

held, "[b]ecause an alien's testimony alone may support an application for

[restriction on] removal or asylum, the IJ must give specific, cogent reasons for

disbelieving it." 358 F.3d at 727 (quotation and citation omitted). We reiterated

this proposition in *Wiransane*, noting "we have joined several other circuits in

requiring that an IJ generally must give 'specific, cogent' reasons for an adverse

-6-

credibility finding." 366 F.3d at 897 (quoting *Sviridov*, 358 F.3d at 727). In *Vatulev*, we upheld the IJ's determination that the petitioner had not met her burden of establishing refugee status noting that she did not provide sufficient details to support her claim and concluding that the "vague and conclusory nature of [her] testimony undercut its probative value." 354 F.3d at 1210.

The BIA cited to relevant case law regarding adverse credibility determinations in this court. The IJ complied with the relevant case law by giving specific, cogent reasons for his adverse credibility determination and the determination was substantially reasonable. The record demonstrates that Mr. Herry was given an opportunity to provide an explanation for certain inconsistencies in his appearance after the alleged incident and he was not able to offer any credible explanation, responding "I can't answer that" and "I have complete[ly] forgotten." Admin. R. at 118. The BIA's decision affirming the IJ's adverse credibility finding applies the correct legal standards and is supported by substantial evidence in the record.

B

Mr. Herry testified that his father was murdered in 1991 by a native Indonesian who worked as their gardener. The murderer was apprehended one year later and imprisoned for four years for the crime. Mr. Herry testified that the murderer threatened his family and said that as soon as he was released from

prison he was going to find them. Because Mr. Herry's mother was afraid something would happen to him, she sent him to live in Bali in 1996.

Mr. Herry testified that he feared returning to Indonesia because he is still afraid of his father's murderer. He testified that he is afraid of the murderer because "[the murderer is] angry because he was put in prison, and usually when you're put in prison, you want somebody to pay for that." *Id*. at 113. When Mr. Herry was then asked if he was involved in putting the murderer in prison, he responded: "No, but my whole family was involved in putting him in jail, and he might accuse the whole family." *Id*. at 114.

After the hearing, the IJ made the following findings:

> The respondent also expresses a fear of reprisal by the perpetrator who killed the respondent's father. Again, I think that it is rather unlikely that the respondent would be singled out by this man for harm since the respondent did not have any prominent role in the prosecution of his father's killer. In any event, it would appear that this would be a purely personal vendetta by one man against the respondent or his family and as such would not implicate any of the protected grounds under the Immigration and Nationality Act. Therefore, the respondent could not be granted [restriction on] removal . . . due to this liability.

*Id*. at 58.

Mr. Herry argues that the IJ erred because he did not consider whether the murder of Mr. Herry's father itself qualified as an act of persecution, but instead considered only whether Mr. Herry had a well-founded fear that his father's murderer might attack him if he returned to Indonesia. While that may be true,

Mr. Herry's counsel did not argue at the hearing that the murder itself constituted persecution, rather he focused on Mr. Herry's fear of his father's murderer. *See, e.g., id.* at 94-95, 106. The IJ's findings were in response to the arguments and evidence presented at the hearing. Moreover, there is substantial evidence in the record to support the conclusion that the murder was not persecution.

In order to be considered persecution, the act must be on account of a protected ground. *See* 8 C.F.R. § 1208.16(b)(1). At the hearing, the following exchange took place between Mr. Herry and counsel for the government:

Q. Why did [the gardener] kill your father?
A. He asked for more money from my father, but my father never answered him. And then he started watching for time where my father was alone . . . . And so when he was by himself, that's when he asked for money again, and that's when it happened.
Q. Do you know how much money he asked for?
A. No, I don't know.
Q. So he killed your father because your father refused to give him money?
A. Yes.
Q. Was there any other reason he killed your father?
. . .

[A.] He was angry because my father did not give him the extra money so he decided to get it all to ameliorate his anger.

Admin. R. at 113-14.

Mr. Herry's testimony makes clear that his father's murder was not on account of any protected ground. Mr. Herry attempts to argue on appeal that the generalized animosity towards ethnic Chinese makes this a mixed-motive case in which ethnicity "undoubtedly played some significant part." Pet. Br. at 24.

There is no support in the record for this statement. Mr. Herry is unequivocal about the reason for his father's murder. As set forth above, he was given the opportunity to offer other reasons for the murder and he gave none. Because there is no evidence that the murder was on account of ethnicity, it did not provide a basis for granting relief.

To the extent Mr. Herry is also challenging the IJ's finding regarding his fear of future persecution from his father's murderer, we conclude that substantial evidence in the record supports the IJ's finding that the vendetta against Mr. Herry and his family was purely personal and did not implicate any of the protected grounds under the Act.

The petition for review is DENIED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge