**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 18, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JIAN HUI LI,

        Petitioner,

v.

PETER D. KEISLER,[*] Acting United
States Attorney,

        Respondent.

No. 06-9589
(No. A77-293-377)
(Petition for Review)

---

**ORDER AND JUDGMENT**[**]

---

Before **HENRY** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.

---

      Petitioner Jian Hui Li, a Chinese citizen, seeks review of a Board of

Immigration Appeals (BIA) order adopting the decision of an Immigration Judge

(IJ) denying his application for asylum, withholding of removal, and relief under

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Peter D. Keisler is substituted for Alberto
R. Gonzales as of September 17, 2007.

[**]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the Convention Against Torture (CAT).[1] We hold that Mr. Li has failed to carry the heavy burden placed on those challenging adverse asylum and withholding determinations. Accordingly, we deny his petition for review.

Mr. Li attempted to enter this country on November 11, 1999, without a valid entry document. The Department of Homeland Security (DHS) commenced removal proceedings against him by filing a notice to appear. Mr. Li conceded removability, but applied for the above-noted relief.

To obtain asylum, Mr. Li had to prove that he is a refugee as defined in 8 U.S.C. § 1101(a)(42)(A), and then persuade the Attorney General to exercise his discretionary authority to grant relief, *see id.* § 1158(b). The IJ concluded that he did not meet the threshold criterion of establishing that he is a refugee. The BIA summarily affirmed.

A petitioner may demonstrate his entitlement to refugee status by showing that he has suffered past persecution, or that he has a well-founded fear of future persecution, on account of his "race, religion, nationality, membership in a particular social group, or political opinion." *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003). Our review is limited "to evaluating whether the record on the whole provides substantial support for that determination or, rather, is so

---

[1]    Mr. Li does not mention his claim for CAT relief in his brief in this court; accordingly, we consider any argument pertinent to that claim waived for purposes of appeal.

decisively to the contrary that a reasonable factfinder would have concluded [Mr. Li] is a refugee." *Id.*

Mr. Li contends that while he lived in China, the Chinese government persecuted him for his resistance to its coercive population control program. For purposes of asylum eligibility,

> a person who . . . has been persecuted for . . . resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo [sterilization] or subject to persecution for . . . failure [or] refusal [to be sterilized] or resistance [to a coercive population control program] shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42).

At the hearing before the IJ, Mr. Li described his experiences with Chinese population control officials. The IJ found his testimony credible. Mr. Li testified that his parents were farmers in the Fujian province. As Catholics, they did not believe in China's so-called "one-child policy." After Mr. Li's birth, he testified, his parents went into hiding for eight years to avoid being involuntarily sterilized. During the time they were in hiding, they had two more children, in 1988 and 1992.

After the birth of Mr. Li's sister, their third child, the family resurfaced and returned to their hometown so that Mr. Li could register to go to school. As a result of regularizing their status with the authorities, Mr. Li's mother was forced

to undergo sterilization. The family was also fined 35,000 Renminbi (RMB) for violating the one-child policy, a sum that had to be paid in order for Mr. Li to attend school.[2]

The family was permitted to make payments on the fine. The government later complained that the Li family paid too slowly and it imposed an interest rate of 15 percent on the unpaid balance. Mr. Li testified that population control officials came to their house frequently, urging them to pay the fine. If the family failed to make a payment or paid late, the officials would seize their belongings. The officials also argued with Mr. Li's father. One such argument escalated into a physical fight. On that occasion and one other occasion, the father was jailed.

Nevertheless, his parents continued to make payments on the fine and Mr. Li attended school until he reached the age of 15. At that point, a drought struck his hometown, drastically reducing his parents' income from farming and their ability to make payments on the fine. At around this time, Mr. Li also got into a physical altercation with family planning officials when they tried once again to seize the family's possessions. During the fight, Mr. Li's forearm was broken. Since his parents could no longer pay the fine, Mr. Li was forced to quit school. Three months later, he left China.

---

[2] Mr. Li estimated that this amount of Chinese currency was equivalent to $4,000 in United States currency. Admin. R. at 113.

The IJ concluded that the incidents that Mr. Li described, even if true, constituted at most harassment and discrimination, but not past persecution within the meaning of the asylum statute. He further concluded that Mr. Li did not have a well-founded fear of being sterilized. While his mother might have a case for asylum based on her involuntary sterilization, the IJ did "not believe . . . that the fact that the mother was sterilized 12 years ago gives this respondent, who is a 20-year-old single man, a basis for claiming that he has an objectively reasonable fear of being sterilized in [China]." Admin. R. at 82. The IJ further concluded that upon return to China, Mr. Li would have to have a first child and then a second before he would be in any danger of sterilization. Finally, he found no evidence "that the government of China is going to be after him because his parents have more than the allotted number of children" or because they "still haven't managed to pay off the family planning offense fine or penalty." *Id.* at 83. While the Chinese government might incarcerate or interrogate him for leaving the country without permission, there was no evidence that he would be persecuted in the future based on one of the statutory grounds.

Upon the record we have, we cannot say that any reasonable fact-finder would have had to conclude that Mr. Li is a refugee. On petition for review, his primary arguments concern past persecution. He presents two forms of past persecution he contends satisfy the statute: deprivation of his right to education

and the physical injury he received during his fight with population control officials.

The record reveals that the reason Mr. Li was excluded from education (for three months, until he left China) was that his parents had failed to make payments on the family planning offense fine due to a loss of income resulting from a drought. Prior to the drought, his family made payments for many years and he was permitted to attend school during those years. Mr. Li has made no showing that he would have been excluded from education if his family's financial situation had improved and if they were therefore able to resume making payments on the fine. In sum, his temporary exclusion from educational benefits was the result of economic circumstances tied only very indirectly to his family's resistance to China's one-child policy.

Mr. Li's broken arm or wrist is a more serious matter,[3] but not one that requires that he be accorded refugee status, given all the circumstances of this case. While the injury is regrettable, Mr. Li does not deny that it resulted from a fight in which he actively participated. It appears, in fact, that he voluntarily intervened in a financial dispute between his parents and family planning

---

[3] The IJ characterized the injury as a broken wrist. *See* Admin. R. at 82. The evidence is ambiguous concerning whether Mr. Li broke his wrist or his arm. *See id.* at 126-27. Mr. Li does not contend that the IJ's characterization requires reversal of his decision. As we detail herein, however, even if it was a broken arm, the evidence does not compel a finding of past persecution.

officials.  We further note that Mr. Li does not allege that he was threatened, subjected to other incidents of abuse, detained, or subjected to other humiliating or harmful acts beyond the physical injury he received.  A single injury, on a single occasion, of this type has been held insufficiently serious to give rise to refugee status.  *See Zhu v. Gonzales*, 465 F.3d 316, 319-20 (7th Cir. 2006) (holding that alien who had been kicked and struck by family planning officials, and hit on head with brick, requiring seven stitches, did not demonstrate injuries sufficiently severe to constitute past persecution), *cert. denied*, 127 S. Ct. 2249 (2007); *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280-81 (10th Cir. 2005) (collecting cases regarding severity of incidents required to constitute past persecution).

Mr. Li makes little specific argument concerning future persecution.  He notes that  a successful showing of past persecution would raise a presumption of a well-founded fear of future persecution.  *See* Aplt. Br. at 7 (citing 8 C.F.R. § 208.13(b)(1)).  As we have explained, however, he has failed to make show past persecution and so the presumption has not been activated.  He also makes a conclusory argument concerning future persecution, that "[i]f the Petitioner is sent back to China, he will face severe mental and physical torture and future persecution.  The torture will be in the form of detention, labor camp, humiliations in public, or imprisonment." *Id.* at 11.  This argument fails to address any of the IJ's reasons for concluding that Mr. Li failed to make a

showing of a well-founded fear of future persecution. Reversal is not required based on this conclusory argument.

Finally, we note that because the standard for withholding of removal is higher than that required for asylum, Mr. Li's failure to establish a well-founded fear of persecution for asylum purposes necessarily makes him ineligible for withholding of removal. *See Estrada-Escobar v. Ashcroft*, 376 F.3d 1042, 1048 (10th Cir. 2004).

The petition for review is DENIED.

Entered for the Court

Stephen H. Anderson
Circuit Judge