[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 13, 2005
THOMAS K. KAHN
CLERK

No. 05-10140
Non-Argument Calendar
_____

Agency Nos.  A97-190-630, A97-190-631

HAIDER NAMER SALEH,
CHADIA IBRAHIM SALEH,
ALI HAIDAR SALEH,
WAIL HAIDAR SALEH,

                                                    Petitioners,

        versus

U.S. ATTORNEY GENERAL,

                                                    Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 13, 2005)

Before DUBINA, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Haider Namer Saleh ("Haidar")[1], his wife Chadia Ibrahim Saleh ("Chadia"), and their children, Ali Haidar Saleh ("Ali") and Wail Haidar Saleh ("Wail") (collectively referred to as "Petitioners"), seek review of the Board of Immigration Appeals's ("BIA's") decision affirming the Immigration Judge's ("IJ's") order denying their application for asylum, withholding of removal under the Immigration and Nationality Act ("INA") and the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT relief"), 8 U.S.C. §§ 1158(a), 1231(b)(3), 8 C.F.R. § 208.16(c).

In their application, the Petitioners sought relief from being removed to Nigeria and Lebanon. On appeal, with respect to their Nigerian claims, Petitioners argue that the IJ mischaracterized certain facts to which Haidar testified and erroneously applied a "singled out" theory of persecution to their claims. They submit that they may establish a well-founded fear through a pattern and practice of persecution of people similarly situated to them. They contend that Haidar's testimony as well as the documentary evidence established that white Lebanese in Nigeria were subject to a pattern and practice of persecution on account of race by black ethnic Nigerians. They assert that the evidence showed that ethnic Nigerian

---

[1] It is not clear whether the lead Petitioner's name is "Haidar" or "Haider," as both spellings are used in various locations in the record.

civilians were agents of the Nigerian government such that they qualified for CAT relief.

With respect to their Lebanese claims, the Petitioners argue that Haidar's testimony is corroborated by country conditions in the record that show that the Lebanese government is controlled by Syria, and the Petitioners have a well-founded fear of future persecution based on a pattern and practice of persecution of similarly situated Muslims in Lebanon who believe in democracy and western values. They contend that they are eligible for asylum, withholding of removal, and CAT relief in Lebanon.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). To the extent that the BIA's decision was based on a legal determination, review is *de novo*. *Mohammed v. Ashcroft*, 261 F.3d 1244, 1247-48 (11th Cir. 2001). The BIA's factual determinations are reviewed under the substantial-evidence test, and we "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Al Najjar*, 257 F.3d at 1283-84 (citation omitted). The substantial evidence test is "deferential" and does not allow "re-weigh[ing] the evidence from scratch." *Mazariegos v. U.S. Att'y Gen.*, 241 F.3d 1320, 1323 (11th Cir. 2001). "To reverse the IJ's fact findings, we must find that the record not only

3

supports reversal, but compels it." *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003) (considering withholding of removal claim). Because the BIA did not issue a decision in this case, we review the IJ's decision.

An alien who arrives in or is present in the United States may apply for asylum. *See* INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Secretary of the Department of Homeland Security or the Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee." *See* INA § 208(b)(1), 8 U.S.C. § 1158(b)(1), as amended by § 101(a) of the REAL ID Act of 2005, Pub. L. No. 109-13 (May 11, 2005), 119 Stat. 231, 302-03. A "refugee" is

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. *Al Najjar*, 257 F.3d at 1284. To establish asylum eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause such future persecution. 8 C.F.R. § 208.13(a), (b); *Al Najjar*, 257 F.3d at 1287. "Demonstrating such a connection

4

requires the alien to present specific, detailed facts showing a good reason to fear that he or she will be *singled out* for persecution on account of such an opinion [or other statutory factor]." *Al Najjar*, 257 F.3d at 1287 (internal quotation omitted). An asylum applicant may not show merely that he has a political opinion, but must show that he was persecuted because of that opinion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483, 112 S. Ct. 812, 816, 117 L. Ed. 2d 38 (1992).

To qualify for withholding of removal under the INA, an alien must show that it is more likely than not that if returned to his or her country, the alien's life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3); 8 U.S.C. § 1231(b)(3). "An alien bears the burden of demonstrating that he more-likely-than-not would be persecuted or tortured upon his return to the country in question." *Mendoza*, 327 F.3d at 1287. For both asylum and withholding of removal, an alien must demonstrate some nexus between the alleged persecution or fear of persecution and one of the five protected grounds. *See Perlera-Escobar v. Executive Office for Immigration*, 894 F.2d 1292, 1297 (11th Cir. 1990) ("Even a clear probability that an alien's life is threatened without any indication that the basis of the threat is related to a statutorily enumerated ground is insufficient to establish eligibility for relief.").

5

An alien who has not shown past persecution may still be entitled to asylum or withholding of removal if he can demonstrate a future threat to his life or freedom on a protected ground in his country. 8 C.F.R. §§ 208.13(b)(2), 208.16(b)(2). To establish a "well-founded fear," "an applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable." *Al Najjar*, 257 F.3d at 1289 (discussing well-founded fear as it applies to asylum). An applicant may establish a well-founded fear without showing that he would be singled out for persecution if

> (A) The applicant establishes that there is a pattern or practice in his or her country of nationality or, if stateless, in his or her country of last habitual residence, of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and
> (B) The applicant establishes his or her own inclusion in, and identification with, such group of persons such that his or her fear of persecution upon return is reasonable.

8 C.F.R. § 208.13(b)(2)(iii) (asylum); see also 8 C.F.R. § 208.16(b)(2)(i), (ii) (withholding of removal). "An imputed political opinion, whether correctly or incorrectly attributed, may constitute a ground for a 'well-founded fear' of political persecution within the meaning of the INA." *Al Najjar*, 257 F.3d at 1289 (quotation omitted). If, however, "an applicant is unable to meet the 'well-founded fear' standard for asylum, he is generally precluded from qualifying for either asylum or withholding of [removal]." *Id.* at 1292-93 (quotation omitted).

6

To obtain withholding of removal under the CAT's implementing regulations, an alien must establish that he "more likely than not" will be tortured upon his return to his home country. 8 C.F.R. § 208.16(c)(2). "Torture" is defined as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

*Id.* § 208.18(a)(1). If the petitioners "failed to demonstrate a 'well-founded fear of persecution' sufficient to support an asylum claim, they likewise cannot establish 'torture' sufficient to warrant relief under CAT" because "[t]he burden of proof for an applicant seeking withholding of removal under the Convention, like that for an applicant seeking withholding of removal under the statute, is higher than the burden imposed on an asylum applicant." *Al Najjar*, 257 F.3d at 1303.

"Not all exceptional treatment is persecution." *Gonzalez v. Reno*, 212 F.3d 1338, 1355 (11th Cir. 2000). "[W]e have discussed other circuits' holdings that 'persecution' is an 'extreme concept,' requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005)

7

(quotation omitted). "[D]iscrimination on the basis of race or religion, as morally reprehensible as it may be, does not ordinarily amount to 'persecution.'" *Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998) (quotation omitted). "Mere generalized lawlessness and violence between diverse populations, of the sort which abounds in numerous countries and inflicts misery upon millions of innocent people daily around the world, generally is not sufficient to permit the Attorney General to grant asylum to everyone who wishes to improve his or her life by moving to the United States . . . ." *Id.* "[A]cts of common criminality or personal hostility . . . do not implicate asylum eligibility." *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003). Forced recruitment by a guerilla organization does not constitute persecution merely because the guerilla group has a particular political opinion, and an individual who refuses to side with any particular political group or faction does not express a political opinion. *See Elias-Zacarias*, 502 U.S. at 482-83, 112 S. Ct. at 816.

In the instant case, substantial evidence supports the IJ's determination that the Petitioners were not entitled to asylum, withholding of removal, or CAT relief with respect to either Nigeria or Lebanon. Haidar related incidents in Nigeria in which (1) he and some friends were robbed by thieves; (2) his brother was severely beaten by police looking for bribes; (3) a Lebanese "big businessman" was killed and his wife raped by employees; (4) his babysitter possibly abused his son, later

8

demanded money, and began threatening Haidar and his family; and (5) his brother-in-law's water factory was closed, allegedly by ethnic Nigerians.[2]  This treatment does not rise to the level of persecution.  The country conditions indicate that (1) ethno-religious violence is widespread across many of Nigeria's ethnicities and regions; (2) police regularly mistreat civilians to extort money; and (3) Nigeria's economy is in decline.  Additionally, the Petitioners have not established a nexus between one of the five protected grounds and the treatment.  Although Haidar testified that the events were motivated by race or nationality, no other evidence in the record compels the conclusion that the Nigerian government or Nigerians in general persecute Lebanese or other non-Nigerians on account of race or nationality.  The evidence suggests that Nigeria suffers from widespread conflict due to its numerous internal ethnic populations.  Further, evidence relating to the Petitoners' departure from Nigeria suggests, as the IJ found, that Haidar was not fleeing persecution.  Therefore, the Petitioners failed to establish past persecution in Nigeria.  The Petitioners offered no evidence of persecution in Lebanon.  Therefore, they failed to establish past persecution in Lebanon as well.

The Petitioners also did not demonstrate a well-founded fear of future persecution.  While evidence of a pattern and practice of persecution against

---

[2] We acknowledge that the Petitioners are correct in their assertions that the IJ misstated some of the facts.  However, even as correctly stated, the facts do not warrant relief.

9

similarly situated individuals may be used to establish a well-founded fear of future persecution, as discussed above, the treatment in Nigeria does not rise to the level of persecution, and the Petitioners offer no evidence that compels the conclusion that a nexus existed between the treatment and a statutory factor. The fact that numerous members of Haidar's family continue to reside in Nigeria without incident suggests that Haidar's subjective fear of future persecution in Nigeria is not objectively reasonable. Haidar's subjective fear of future persecution in Lebanon is also not objectively reasonable. The evidence on country conditions in Lebanon does not compel a conclusion that "political parties" or terrorist groups actively recruit members involuntarily in Lebanon. Even if it did compel such a conclusion, recruitment is not persecution as stated earlier. Further, the Petitioners have not established a nexus between any future persecution, or a pattern and practice of persecution against similarly situated individuals, and a statutory factor. The Petitioners claim that the groups persecute Lebanese who believe in democracy and western values. However, nothing in the record compels the conclusion that the groups sought to recruit Haidar on account of his beliefs, and Haidar's mere refusal to join by itself is not an expression of political opinion. Thus, the evidence does not compel the finding that the Petitioners have a well-founded fear of future persecution in either Nigeria or

10

Lebanon, and they are ineligible for withholding of removal, as they did not establish eligibility for asylum, which carries a lower burden of proof.

Finally, the Petitioners' claim for CAT relief fails because (1) they did not demonstrate that the harm they suffered or will suffer was inflicted at the instigation of, or with the consent or acquiescence of, a public official, and (2) they failed to demonstrate a well-founded fear sufficient to support a claim of asylum, and CAT relief requires a higher burden of proof. Thus, substantial evidence supports the IJ's determination that the Petitioners are not entitled to relief; accordingly, we deny the petition.

**PETITION DENIED.**